*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0293p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 05-3577

DEMETRIUS PRUITT,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00489—James Gwin, District Judge.

Submitted: June 7, 2006

Decided and Filed: August 11, 2006

Before: SILER, CLAY, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Charles E. Fleming, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Bruca A. Khula, UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

McKEAGUE, J., delivered the opinion of the court, in which SILER, J., joined. CLAY (pp. 8-13), delivered a separate concurring opinion.

---

## OPINION

---

McKEAGUE, Circuit Judge. Defendant-appellant Demetrius Pruitt appeals the district court's grant of the Government's motion for reconsideration of Pruitt's motion to suppress evidence obtained during a protective sweep of a third-party's residence. For the reasons that follow, the ruling of the district court is affirmed.

### I. BACKGROUND

In June of 2004, Demetrius Pruitt was on parole following his conviction for possession of cocaine, possession of marijuana, and possession of drug-use paraphernalia in violation of Ohio law. Pruitt became a fugitive from justice after failing to report to his parole officer in July of 2004. After law enforcement officials were unable to locate Pruitt at his listed address, an arrest warrant was issued in the Lorain County Common Pleas Court.

1

During this time period, the U.S. Marshal's service was conducting "Operation LASSO" in Lorain County in conjunction with the Lorain Police Department and the Adult Parole Authority. The collaborative program was designed to arrest potentially violent fugitives. Following issuance of the arrest warrant, officials involved with the initiative began an investigation of Pruitt's whereabouts.

In August 2004, an anonymous female caller contacted Burt Fitzgerald, Pruitt's parole officer. She told Fitzgerald that Pruitt was no longer residing at the address that Pruitt had provided, but instead was residing at 2652 Meister Road, Lorain, Ohio. Fitzgerald believed, but did not verify, that the caller was Pruitt's ex-girlfriend, a woman he had spoken to previously in either December 2003 or January 2004. The caller told Fitzgerald that she had seen Pruitt at the Meister Road address within the past few hours, and that Pruitt was in possession of drugs and a firearm. Fitzgerald reported the anonymous tip to the LASSO officers, who began surveillance in the Meister Road area.

Shortly after arriving in the area, the officers saw a man knock and enter the Meister Road home. The man exited the home a few minutes later, and sped away from the scene, prompting the officers to conduct a traffic stop. The driver identified himself as "Freddie Garcia" and produced a driver's license and recited a social security number. The officers showed the driver a photograph of Pruitt, who he identified as "Meaty." He stated that "Meaty" was inside the residence, and that "Meaty" had refused to sell him crack cocaine on credit.[1] He stated that there was crack cocaine in the Meister Road residence.

Unbeknownst to the officers, the driver was not Freddie Garcia, but was Thomas Garcia, who had possession of his brother's driver's license and knowledge of his social security number. The officers were unaware of this fraudulent identity until just prior to the suppression hearing in the district court.

After receiving the information from Garcia, the officers went to the Lorain County Municipal Court to seek a search warrant for 2652 Meister Road. The prosecutor prepared a form affidavit after Detective Earl related the anonymous tip and Garcia's statement, which Earl then signed without reviewing. The section of the affidavit requiring the affiant to provide the facts upon which the warrant should issue was left blank.

Subsequently, the detective presented the defective affidavit to the Municipal court. Detective Earl recited the factual basis for the search warrant under oath, however, no transcript of his sworn statement was prepared. Following Earl's testimony, the search warrant was issued. Earl notified the LASSO team that the warrant had been issued and the team entered the Meister Road residence.

Upon entry, the officers found Pruitt hiding in a kitchen closet. Pruitt was arrested and a protective sweep of the premises was conducted. The officers found several bags of crack cocaine, marijuana, a wallet, and a loaded .25 caliber pistol all within plain view. Pruitt refused to allow the officers to search the premises, stating that it "wasn't his place," although he admitted to owning the contraband that the officers had collected during the protective sweep. The LASSO team returned to the Municipal Court to successfully obtain another search warrant for the premises, because Pruitt disclaimed ownership of the property.

Pruitt was indicted on December 20, 2004, for being a felon in possession of a firearm and for possession with intent to distribute crack cocaine, in violation of 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C) respectively.

---

[1]The officers recognized "Meaty" as Pruitt's street name.

On December 20, 2004, Pruitt moved to suppress the evidence obtained in the search of the Meister Road Residence. Pruitt claimed that the officer's reliance on Garcia's statements was improper because he had provided false identification to the police, and that Garcia's credibility was lacking because he admitted to police that he was trying to purchase crack cocaine. Pruitt also argued that the "bare bones" affidavit, lacking any factual basis upon which a warrant could issue, was so defective that it could not be saved by the good faith exception of *United States v. Leon,* 468 U.S. 897 (1984).

On March 16, 2005, the district court granted Pruitt's motion to suppress, finding that he had a limited expectation of privacy in the Meister Road residence pursuant to *Minnesota v. Olson,* 495 U.S. 91 (1990). The court also found that the search warrant lacked indicia of probable cause because there were no facts listed in the affidavit, and the sworn statement of detective Earl was not transcribed. Thus, the LASSO team could not have reasonably relied on the search warrant in order to meet the good faith exception of *Leon*.

On March 17, 2005, the Government moved the district court to reconsider the suppression order. The Government relied on this court's published opinion in *United States v. Buckner*, 717 F.2d 297 (1983). The district court found that while the relevant portion of *Buckner* was dicta, it was still worthy of consideration and on March 18, 2005, the court reversed its grant of Pruitt's motion to suppress. This decision was timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court properly exercised subject matter jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

When reviewing the denial of a motion to suppress, this Court reviews a "district court's findings of fact for clear error and its conclusions of law *de novo*," considering the evidence "in the light most likely to support the district court's decision." *United States v. Hurst,* 228 F.3d 751, 756 (6th Cir. 2000) (citations omitted). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho,* 186 F.3d 701, 705 (6th Cir. 1999).

## III. ANALYSIS

### A. The Search Warrant Issued for 2652 Meister Road was Invalid

An affidavit underlying the issuance of a search warrant must provide information sufficient to establish "a substantial basis for determining the existence of probable cause." *Leon*, 468 U.S. at 915 (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). In the absence of an affidavit containing the essential facts, a warrant may be obtained in reliance on sworn testimony, but such testimony must be recorded by a court reporter, and the judge must file a transcript with the clerk. Fed. R. Crim. P. 41(2)(d)(B)-(C). Pruitt contends that the affidavit filed by Detective Earl constituted an invalid "bare bones" affidavit because there were no facts establishing the grounds for the issuance of the search warrant, as required by *Leon*. Further, Pruitt argues that Earl's oral recitation of the facts was inadequate because no court reporter was present to transcribe the testimony and no transcript was entered as required by Federal Rule of Criminal Procedure 41(d)(2)(C).

The Government argues that despite the failure of the detective to follow the correct procedure, the LASSO team relied on the warrant in good faith, and the search is protected under the *Leon* good faith exception. The *Leon* good faith exception allows for the inclusion of evidence obtained by an invalid warrant if the officers reasonably and in good faith relied on the warrant at

the time the search was conducted. *Leon,* 468 U.S. at 922. Here, the district court properly ruled that the officers could not have had a good faith belief that the warrant was valid because the warrant was obtained with a "bare bones" affidavit, and no transcript of Earl's sworn statement was recorded by the Court. (Order of the district court, JA 76) Under *Leon*, such a bare bones affidavit cannot support a reasonable belief on the part of law enforcement officials that a warrant is valid. *Leon,* 468 U.S. at 915.

## B. Appellant's Fourth Amendment Rights Were Not Violated

Pruitt asserts that the officer's entry into the Meister Road home violated his Fourth Amendment rights, because the officers did not have a valid search warrant, and relies on *Steagald v. United States,* 451 U.S. 204 (1981). In *Steagald*, police entered Steagald's home with a valid arrest warrant for another individual, Ricky Lyons. *Id.* at 206. While on the premises the officers observed a substance they believed to be cocaine, as well as other contraband. *Id.* Based on this observation, the officers obtained a search warrant for the home that led to the discovery of 43 pounds of cocaine. Steagald was arrested and indicted on federal drug charges based on this evidence. *Id.* at 205-06.

Steagald moved to suppress the evidence on the ground that it was illegally obtained because agents failed to procure a search warrant for the home, instead relying on Lyons's arrest warrant to execute what officers believed to be a lawful entry. *Id.* at 207. Steagald argued that his Fourth Amendment privacy rights were violated by the unwarranted search. *Id.* The Court agreed, and stated: "[W]hile the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect petitioner's privacy interest in being free from an unreasonable invasion and search of his home." *Id*. at 213. In our case, Pruitt argues that the lack of a valid search warrant violated his Fourth Amendment rights, because the police entered his girlfriend's home to execute Pruitt's arrest warrant.

We find the holding in *Steagald* easily distinguishable here. In *Steagald*, the Court carefully circumscribed the issue , stating "the narrow issue before us is whether an arrest warrant- as opposed to a search warrant - is adequate to protect the Fourth Amendment interests of persons *not named in the warrant*, when their homes are searched without their consent and in the absence of exigent circumstances." *Id.* at 212 (emphasis added). The Court was not considering the Fourth Amendment rights of the subject of the arrest warrant, but concerned itself with the homeowner's privacy rights.[2] The *Steagald* Court ruled that the intrusion and search of a third-party's home in reliance on the arrest warrant issued for another individual violated the Fourth Amendment privacy rights of the homeowner. Thus, *Steagald* does not resolve the issue before us; namely whether officers may rely on an arrest warrant, coupled with the reasonable belief that the subject of the warrant is within a third-party's residence, to enter that residence to execute the warrant.

We have already considered this issue, albeit in dicta, in *Buckner*, 717 F.2d 297 (decided on standing). In *Buckner*, officers entered Buckner's mother's home, armed only with an arrest warrant and the reasonable belief that Buckner was on the premises. *Id.* at 299. In considering Buckner's motion to suppress, we stated that because the defendant was the individual named on the arrest warrant, we were required to apply the holding of *Payton v. New York,* 445 U.S. 573 (1980) rather than the ruling in *Steagald*. In *Payton*, the Court held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the

---

[2]In fact, the *Steagald* Court carefully considered the distinct Fourth Amendment rights of the subject of an arrest warrant and those of a third-party homeowner. An arrest warrant protects the subject of the warrant from an unreasonable seizure of his person, while a search warrant protects "an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Id.* at 213.

suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S. at 603.  We stated in *Buckner*:

> Under *Payton*, the police could have entered the defendant's own home if they had a warrant for his arrest and reason to believe that he was inside.  It would be illogical to afford the defendant any greater protection in the home of a third party than he was entitled to in his own home.  That illogical result, however, is precisely what would happen if we accepted the defendant's contention that *Steagald* required a search warrant in this case.

*Buckner*, 717 F.2d at 300.  As the district court properly noted, the rationale underlying *Buckner* is applicable here.  It is illogical to extend to Pruitt greater rights of privacy in the Meister Road home of his girlfriend than he would have been afforded in his residence of record under *Payton*.

Pruitt argues that even if he did not have a privacy interest in the Meister Road residence requiring a search warrant, the police did not have reason to believe that he was in the home at the time of his arrest.  He asserts that a circuit-split exists regarding the standard required for establishing a "reasonable belief" upon which officers may rely in order to enter a third-party's dwelling with only an arrest warrant.  Pruitt urges this court to adopt the Ninth Circuit's ruling in *United States v. Gorman,* 314 F.3d 1105 (9th Cir. 2002).  In *Gorman*, the court ruled that probable cause was required to support the reasonable belief that the subject of an arrest warrant was in a third-party's residence.  *Id.* at 1111-15.  Pruitt contends that the officers here could not have had probable cause based only on an uncorroborated anonymous tip and the statement of an unknown and untested drug-seeking informant who provided the officers with fraudulent identification. (Appellant's Br. at 24).  Pruitt argues that such evidence is insufficient to meet the probable cause standard enunciated in *Gorman*.

In response, the Government argues that while a circuit-split does exist, a majority of the circuits that have ruled on the issue have determined that a lesser reasonable belief standard, and not probable cause, is sufficient to allow officers to enter a residence to enforce an arrest warrant, and that the officers here had adequate information in this case to meet this standard.  We agree.

Reasonable belief is established by looking at common sense factors and evaluating the totality of the circumstances.  *See United States v. McKinney*, 379 F.2d 259, 264 (6th Cir. 1967); *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995); *Valdez v. McPheters*, 172 F.3d 1220, 1226 (10th Cir. 1999).  In *McKinney*, we held that "a search warrant [was] not necessary to execute an arrest warrant [on the premises of a third party]" when there is a reasonable belief that the suspect is on the premises.  379 F.2d at 263.  In that case, we found that an anonymous tip coupled with information collected a month prior to arrest about the subject's presence around the premises was sufficient to establish a reasonable belief that the suspect was on the premises.  *Id.* at 264.

In this case, the LASSO team evaluated the totality of the circumstances, and formulated a reasonable belief that Pruitt was present at 2652 Meister Road.  The team relied on the anonymous tip given to Pruitt's parole officer, Garcia's identification of Pruitt as "Meaty" in a photograph, and his assertion that "Meaty" was in the residence at that time selling drugs.  As in *McKinney*, the Lasso team considered Pruitt's background information, including his drug dealing past and  his street name, to develop a reasonable belief that Pruitt was in the residence.

Our decision is consistent with the majority of our sister circuits who have ruled that consideration of common sense factors and the totality of the circumstances is sufficient to formulate a reasonable belief that a suspect is on the premises.  *See United States v. Route*, 104 F.3d 59, 62-3 (5th Cir. 1997) (finding that sound of television on the inside of the house and the presence of a car

in the driveway was sufficient to form basis of the reasonable belief that the suspect was in the home); *United States v. Risse*, 83 F.3d 212, 216-17 (8th Cir. 1996) (deciding that telephone call to residence confirming that suspect was there was  far beyond what is necessary to establish reasonable belief); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995) (holding that informant's tip that suspect was unemployed and liked to sleep late was sufficient to establish reasonable belief that suspect was in apartment); *United States v. Edmonds*, 52 F.3d 1236, 1248 (3d. Cir. 1995) (deciding that surveillance in front of apartment and observation that no one left apartment during surveillance was  sufficient to constitute reasonable belief that suspect was in apartment); *United States v. Magluta*, 44 F.3d at 1535-38 (finding that information that suspect's associate  was a frequent visitor to the residence, that associate's car was parked outside, and that suspect's car was parked outside was  sufficient to support reasonable belief that suspect was in residence); *United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005) (deciding that early morning hour of entry was sufficient to establish reasonable belief that suspect would be home); and *McPheters*, 172 F.3d at 1226-27 (holding that defendant's prior statement to officer that he lived with his mother, presence of truck belonging to defendant's known associate outside of the house, reports of his presence at residence in day's prior to entry, and officer's assertion that suspect would probably be home during day because he was unemployed was sufficient to establish the reasonable belief that suspect was in the residence).  Accordingly, we hold that an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish a reasonable belief that the subject of the arrest warrant is within the residence at that time.

Our holding contrasts with that of the Ninth Circuit, which alone has ruled that reasonable belief is the equivalent of probable cause in determining whether a suspect is within the residence. *United States v. Gorman*, 314 F.3d 1105, 1111 (9th Cir. 2002) ("'the reason to believe,' or reasonable belief, standard of *Payton* . . . embodies the same standard of reasonableness inherent in probable cause.").[3]  The concurring opinion suggests that we should adopt this ruling.  In support of this proposal, the concurrence relies on the Supreme Court's likening of probable cause to a reasonable ground for belief (of guilt) discussed in *Maryland v. Pringle*, 540 U.S. 366, 371 (quoting *Brinegar v. U.S.*, 338 U.S. 160, 175 (1949) "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt").  We decline to adopt this view for two reasons.  First, we do not agree with the concurrence's assertion that a "reasonable ground for belief of guilt" is the grammatical  analogue to a reasonable belief that an individual is located within a premises subject to search. These are two entirely different inquiries. Second, the dissent disregards the majority of our sister circuit's holdings, as well as the D.C. Circuit's assertion that it is more than "likely . . . that the Supreme Court in *Payton* used a phrase other than 'probable cause' because it meant something other than 'probable cause.'" *Thomas*, 429 F.3d at 286 (referring to "[t]hus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is *reason to believe* the suspect is within." *Payton*, 445 U.S. at 603) (emphasis added).  We find the D.C. Circuit's analysis convincing.  The *Payton* Court's use of "probable cause" in describing the foundation for an arrest

---

[3] In support of its ruling, the Ninth Circuit cited its own rulings in *Watts v. County of Sacramento*, 256 F.3d 886 (9th Cir. 2001), *United States v. Phillips*, 497 F.2d 1131 (9th Cir. 1974), *United States v. Howard*, 828 F.2d 552 (9th Cir. 1987), *United States v. Winsor*, 816 F.2d 1394, 1399 (9th Cir. 1987), *rev'd en banc*, 846 F.2d 1569, 1574 (9th Cir. 1988), and the dissenting opinion in *United States v. Underwood*, 717 F.2d 482, 486-492 (9th Cir. 1983) (en banc), the Eighth Circuit's ruling in *United States v. Clifford*, 664 F.2d 1090, 1093 (8th Cir. 1981) ("*Payton* authorizes entry on the basis of the existing arrest warrant for the defendant and probable cause to believe that the defendant was within the premises"), and Justice White's non-binding dissenting opinion in *Payton* stating that: "under [the majority's] decision, the officers apparently need an extra increment of probable cause when executing the arrest warrant, namely grounds to believe the suspect is within the dwelling." *Payton*, 445 U.S. at 616 n. 13 (White, J., dissenting).  In doing so, the Ninth Circuit not only overlooked the Eighth Circuit's more recent ruling in *Risse*, 83 F.2d at 216 (finding that a reasonable belief, even if incorrect in fact, is all that is necessary to enter a suspect's dwelling), but disregarded its own majority ruling in *Underwood*, 717 F.2d at 483-86, suggesting that the reasonable belief standard set forth by *Payton*, had been met, based on an informant's tip, and was sufficient to protect a suspect's Fourth Amendment rights.

warrant and its use of "reason to believe" in describing the basis for the authority to enter a dwelling shows that the Court intended different standards for the two. Had the Court intended probable cause to be the standard for entering a residence, it would have either expressly stated so or used the same term for both situations. Instead, its use of different terms indicates that it intended different standards apply.

> By way of example, in *Maryland v. Buie*, 494 U.S. 325 (1990) the Supreme Court held:
>
> [B]y requiring a protective sweep to be justified by *probable cause* to believe that a serious and demonstrable potentiality for danger existed, the Court of Appeals of Maryland applied an unnecessarily strict Fourth Amendment standard. The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a *reasonable belief* based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id*. at 337 (emphasis added). While *Buie* addressed the standard to be applied by police for conducting protective sweeps, it is evident that the Supreme Court does not use the terms probable cause and reasonable belief interchangeably, but rather that it considers reasonable belief to be a less stringent standard than probable cause. *See also United States v. Sokolow*, 490 U.S. 1 (1989) (finding that a reasonable suspicion as embodied in the Fourth Amendment requires less suspicion than for establishing probable cause for purposes of determining reasonableness of officer's belief that suspects were transporting illegal drugs). We therefore conclude that reasonable belief is a lesser standard than probable cause, and that reasonable belief that a suspect is within the residence, based on common sense factors and the totality of the circumstances, is required to enter a residence to enforce an arrest warrant.

## IV. CONCLUSION

For the aforementioned reasons, the ruling of the district court granting the Government's motion for reconsideration should be AFFIRMED.

---

**CONCURRENCE**

---

CLAY, Circuit Judge, concurring.  I write separately because I believe that the facts and posture of this case deserve careful distinction from those circumstances in which an arrestee or a third-party homeowner may assert valid Fourth Amendments interests against warrantless searches. In addition, I believe that the "reason to believe" standard under *Payton v. New York,* 445 U.S. 573 (1980)*,* is the functional equivalent of "probable cause" and not some lesser standard.

## I.

## DISCUSSION

**A.      An Arrest Warrant Protects the Fourth Amendment Rights of the Subject of the Arrest Warrant, But a Premises Search Warrant Is Required to Protect the Fourth Amendment Interests of a Third-Party Homeowner**

Defendant argues that his Fourth Amendment rights were violated when the Lorain Apprehension Search and Seizure Operation ("LASSO") team arrested Defendant in his girlfriend's home without a valid search warrant for the residence.  In particular, Defendant argues that a combined reading of the Supreme Court's opinions in *Payton v. New York*, 445 U.S. at 573, *Steagald v. United States*, 451 U.S. 204 (1981), and *Olson v. United States*, 459 U.S. 91 (1990) indicates that a suspect's Fourth Amendment interests require the police to possess, at minimum, a valid search warrant to search a third-party's residence in order to effectuate an arrest on those premises. Without such a search warrant, Defendant argues, Defendant has suffered a Fourth Amendment injury despite the existence of a valid warrant for Defendant's arrest.

*1.      Under* Payton, *an Arrest Warrant Protects the Fourth Amendment Interests of the Subject of the Arrest Warrant*

The Supreme Court has held that Fourth Amendment interests are personal.  *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998).  Defendant, therefore, can assert only his own Fourth Amendment rights, and not the Fourth Amendment rights of Louisa Serrano, the third-party homeowner in the instant case whose home the police entered without a valid search warrant in order to effectuate the arrest of Defendant.  A review of the case law cited by Defendant with a particular emphasis on *whose* Fourth Amendment interests are implicated in each case is therefore warranted.

In *Payton*, the Supreme Court held that absent consent or exigent circumstances, police could not effect an arrest within a suspect's home without a valid warrant. 445 U.S. at 602.  The Supreme Court rejected the contention, however, that only a premises search warrant sufficiently protected a suspect's Fourth Amendment interests.  *Id.*  Instead, the *Payton* Court noted that a valid arrest warrant for the suspect, based on probable cause, would permit the police to enter a suspect's home to effectuate an arrest.  *Id.* at 603 ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.").  The *Payton* Court did not address the question (presumably because it was not before the Court) of whether entry with merely an arrest warrant would impinge on the Fourth Amendment interests of persons not named in the arrest warrant.

2.       *A Premises Search Warrant Is Required to Protect the Fourth Amendment Interests of Persons Not Named in an Arrest Warrant*

Just one year after *Payton*, the Supreme Court answered the question that it had left open in *Payton* concerning the rights of persons not named in an arrest warrant. The *Steagald* Court was presented with a Fourth Amendment claim by a third-party homeowner. In *Steagald*, the police possessed an arrest warrant for a suspect and had information that the suspect could be found at the home of the third party. 451 U.S. at 206-07. The police entered the third party's home *without* a premises search warrant (but with the arrest warrant) and failed to encounter their suspect, but saw, in plain view, incriminating evidence which they proceeded to use against the homeowner. *Id.* at 206. The Court characterized the issue before it as a "narrow one . . . . [W]hether an arrest warrant – as opposed to a search warrant – is adequate to protect the interests of persons not named in the [arrest] warrant, when their homes are searched without consent and in the absence of exigent circumstances." *Id.* at 212. The Court concluded that only a valid premises search warrant could protect the Fourth Amendment interests of persons not named in the arrest warrant. *Id.* at 217. Therefore, a homeowner may experience a Fourth Amendment injury when the police enter his or her home without a valid premises search warrant (and in the absence of consent or exigent circumstances) in order to effectuate an arrest of a homeowner's guest, even when the police possess a valid arrest warrant for the arrestee. *Id.*

A panel of this Court construed the combined holdings of *Payton* and *Steagald* in *United States v. Buckner*, 717 F.2d 297 (6th Cir. 1983). The *Buckner* panel was presented with the precise question before the Court in the instant case: the police had a valid arrest warrant for a suspect, but no search warrant for the third party premises on which the suspect was actually found. *Id.* at 298-99. The suspect moved to suppress the evidence revealed during the officers' protective sweep of the third-party premises following his arrest on the premises. *Id.* The *Buckner* panel concluded that the defendant in that case lacked standing to challenge the search because he did not reside in the home. The *Buckner* panel also found, however, that even were the defendant to possess Fourth Amendment standing, the rule of *Payton* would apply. Because the officers possessed a valid arrest warrant, the defendant's Fourth Amendment interests were fully protected, because "[i]t would be illogical to afford the defendant any greater protection in the home of a third party than he was entitled to in his own home." *Id.* at 300. The panel distinguished *Steagald* from the case before it because in *Steagald* the third-party homeowner challenged the search, whereas in *Buckner* only the arrestee (the subject of the valid arrest warrant) challenged the search. *Id.* *Steagald*, the panel concluded, protected the Fourth Amendment interests of those persons not named in any arrest warrant, whereas *Payton* protected the interests of the subject of an arrest warrant. *Id.* Because Fourth Amendment rights are personal, the arrestee did not have standing to assert the homeowner's Fourth Amendment injury. *See Carter*, 525 U.S. at 88.

3.       *Defendant Erroneously Argues That the* Payton *Arrest Warrant Requirement Has Been Superseded*

Defendant argues to this Court that the *Buckner* analysis is merely dicta, and even if more than dicta, has been superseded by intervening Supreme Court precedent. Defendant argues that the 1990 *Olson* decision, in which the Supreme Court recognized that overnight guests may have a reasonable expectation of privacy in the homes in which they stay, 459 U.S. at 100, somehow changed the *Payton* and *Steagald* analyses as applied to cases such as Defendant's case. This argument lacks merit. The *Olson* decision recognized the Fourth Amendment interests of overnight guests. *Id.* Yet the *Olson* decision did not purport to overrule *Payton* or *Steagald*; the Supreme Court continues to rely on both cases. *See, e.g.*, *Kirk v. Louisiana*, 536 U.S. 635, 636 (2002) (citing *Payton* for its rule requiring an arrest warrant for an arrest within the suspect's home); *Carter*, 525 U.S. at 100 (1998 decision) (Kennedy, J., concurring) (acknowledging the *Steagald* rule as a rule protecting the interests of homeowners not otherwise subject to an arrest warrant).

*Olson* is entirely compatible with *Payton* and *Steagald*. Before *Olson*, someone else's house was treated like public space insofar as a nonhomeowner's Fourth Amendment interests were concerned. After *Olson*, however, the courts recognized that some guests have Fourth Amendment interests while staying in the home of another akin to the homeowner himself. After *Olson*, the overnight guest has Fourth Amendment standing to challenge the validity of a premises search warrant, something a guest simply could not do before the *Olson* ruling. It does not follow, however, that the *Olson* decision grants greater Fourth Amendment protections to overnight guests than those granted to homeowners' themselves. Under *Payton*, a valid arrest warrant is sufficient to protect the Fourth Amendment rights of the person named in the arrest warrant, even if that arrest takes place in his or her home. It would be incongruous to say that the overnight guest has greater Fourth Amendment protections in the home of another than he or she would have in his or her own home. *See Buckner*, 717 F.2d at 300.

### 4.        *Because Fourth Amendment Interests Are Personal, Defendant Lacks Standing to Assert the Homeowner's Fourth Amendment Injury*

There is an important distinction between the still controlling Supreme Court decision in *Steagald* and the instant case. We are dealing here with the arrestee's Fourth Amendment interests as implicated by an arrest in a place where he or she has a reasonable expectation of privacy; the Supreme Court has held that these interests are sufficiently protected through the procurement of a valid arrest warrant, so long as the attendant premises search is limited to a protective sweep. *See Payton*, 445 U.S. at 589 ("It is true that the area that may legally be searched is broader when executing a search warrant than when executing an arrest warrant within the home."). The arrest warrant, however, sufficiently addresses only the Fourth Amendment rights of persons named in the warrant. For persons not named in the arrest warrant and who possess a reasonable expectation of privacy in the home entered, the Supreme Court's decision in *Steagald* still controls, and the Constitution requires that the police possess a valid premises search warrant in order to enter the home without violating these persons' Fourth Amendment rights. *See Steagald*, 451 U.S. at 217; *see also Carter*, 525 U.S. at 100 (1998 decision) (Kennedy, J., concurring) ("[A]bsent exigent circumstances or consent, the police cannot search for the subject of an arrest warrant in the home of a third party, without first obtaining a search warrant directing entry.").

Were the police to attempt to use any evidence discovered in the home against the homeowner, after entering the home without a search warrant to arrest a guest, the homeowner may have, under appropriate circumstances, a legitimate Fourth Amendment suppression argument. *See Steagald*, 451 U.S. at 217. Alternatively, even without an attempted criminal prosecution against the homeowner, a homeowner subject to a police search without a premises search warrant for the subject of an arrest warrant may have a potential Fourth Amendment injury which may be vindicated through a § 1983 civil rights suit. *See Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (upholding a § 1983 action against officers executing a search of a home without a valid search warrant).[1] The Supreme Court has held, however, that Fourth Amendment interests are personal, *see Carter*, 525 U.S. at 88; therefore, Defendant in this case may not assert the Fourth Amendment rights of Louisa Serrano, the renter of record at 2652 Meister Road, to this Court. Of course, to avoid any Fourth Amendment injury or suppression arguments, from any person involved, the police could procure and appropriately execute a valid premises search warrant. This is the standard procedure used by many police forces today, as evidenced by Lorain County's attempt (ultimately unsuccessful) to procure a valid search warrant before entering the residence in the instant case.

---

[1]A suit may be brought whether or not a homeowner suffers economic injury. The Supreme Court has recognized the availability of nominal damages for the deprivation of absolute rights under 42 U.S.C. § 1983. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978).

This Circuit has employed the above analysis in an unpublished opinion. *See United States v. Watson*, No. 92-3052, 1993 U.S. App. LEXIS 1404, at *8-9 (6th Cir. Jan. 21, 1993) (unpublished opinion). The *Watson* panel held that the *Payton* rule applied in a case in which the defendant argued that his arrest in his friend's home, where the defendant had been staying, violated the defendant's Fourth Amendment rights in the absence of a valid search warrant. *Id.* The *Watson* panel disagreed with the defendant and found that the arrest warrant was sufficient to meet the *defendant's* Fourth Amendment interests. *Id.* Other circuit courts of appeals agree that only an arrest warrant, and not a search warrant, is required to protect the *arrestee's* Fourth Amendment interests. *See United States v. Agnew*, 385 F.3d 288, 291 (3d Cir. 2004); *United States v. Kaylor*, 877 F.2d 658, 663-64 (8th Cir. 1989); *United States v. Underwood*, 717 F.2d 482, 486 (9th Cir. 1983) (*en banc*).

Accordingly, a valid arrest warrant is sufficient to safeguard the Fourth Amendment interests of persons named in the arrest warrant. Of course, should officers wish to insure that everyone's Fourth Amendment interests are protected, not just the interests of the potential arrestee, officers may seek and procure a premises search warrant or obtain the consent of the homeowner.[2] In the instant case, however, Defendant was the named suspect in the arrest warrant, and he may not assert the Fourth Amendment interests of Louisa Serrano.

**B.      The Officers' Reasonable Belief That Defendant Could Be Found at 2652 Meister Road Constituted Probable Cause**

Defendant argues in the alternative that even under the *Payton* rule, the officers' entry into the Meister Road residence violated his Fourth Amendment rights because the officers lacked probable cause to believe that Defendant was present in the home. The government avers that reasonable suspicion, and not probable cause, is the applicable standard, but argues that in this case that the higher standard has been met. Supreme Court case law indicates that "reason to believe" is equivalent to probable cause in the circumstances before this Court, *see Maryland v. Pringle*, 540 U.S. 366, 370-371 (2003); furthermore, the evidence before the district court established that the officers had probable cause to believe Defendant was present at the residence when they entered 2652 Meister Road.

*1.      Reasonable Belief Echoes the Definition of Probable Cause*

The *Payton* Court held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. at 603. The above analysis demonstrates that the *Payton* rule is sufficient to protect the suspect's Fourth Amendment rights even when the arrest warrant is executed in a third party's home in which the suspect may have a reasonable expectation of privacy. Therefore, the question devolves into whether the police, armed with an arrest warrant for Defendant, had "reason to believe" that Defendant was present at the 2652 Meister Road residence when they entered.

The parties differ over the quantum of proof required under the "reason to believe" standard articulated in the *Payton* decision. Defendant argues that "reason to believe" should entail the same protections and level of knowledge inherent in probable cause. The Ninth Circuit has applied such a rule. *See United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002). In contrast, the

---

[2]The officers in the instant case attempted to procure a search warrant before entering the residence, but the warrant's facial invalidity for lack of particularity precluded the officers' reliance on that warrant. Insofar as the record before this Court shows, police did not attempt to prosecute the homeowner for anything found on the premises. This is not to say, however, that Serrano's Fourth Amendment rights were not compromised when the officers entered her home without a valid search warrant when she was not the subject of any arrest warrant.

government argues that "reason to believe" is something less than probable cause and more akin to "reasonable suspicion." The majority adopts this view, and seven circuit courts of appeal have refused to apply the "probable cause" moniker to the "reason to believe" standard and instead have applied the "reason to believe" standard in a literal fashion. *See United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005); *Valdez v. McPheters*, 172 F.3d 1220, 1225-26 (10th Cir. 1999); *United States v. Route*, 104 F.3d 59, 62 (5th Cir. 1997); *United States v. Risse*, 83 F.3d 212, 216 (8th Cir. 1996); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995); *United States v. Edmonds*, 52 F.3d 1236, 1248-49 (3d Cir. 1995); *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995). These courts have either simply asked whether there existed a reasonable basis for an officer's belief that the suspect was in the residence, *see, e.g.*, *Edmonds*, 52 F.3d at 1248, or held explicitly that "reason to believe" is something less than probable cause, *see, e.g.*, *Thomas*, 429 F.3d at 286. The D.C. Circuit opined that "it [is] more likely . . . that the Supreme Court in *Payton* used a phrase other than 'probable cause' because it meant something other than 'probable cause.'" *Id.*

Despite some courts' attempt to distinguish between the two monikers, the "reason to believe" standard directly echoes the underlying definition of probable cause. The Supreme Court has recently expanded on the meaning of probable cause in the context of warrantless arrests in public places:

> On many occasions, we have reiterated that the probable-cause standard is a "practical, nontechnical conception" that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 . . . (1983) [internal quotation omitted] . . . . "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232 . . . .

> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances . . . . We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," . . . and that the belief of guilt must be particularized with respect to the person to be searched or seized, *Ybarra v. Illinois*, 444 U.S. 85, 91 . . . (1979).

*Pringle*, 540 U.S. at 370-371.

The Supreme Court has therefore likened probable cause to a "reasonable ground for belief." *Ybarra*, 444 U.S. at 91. Because this is the grammatical analogue to "reason to believe," the Court's inquiry under the "probable cause" and "reason to believe" standards is the same: ultimately, this Court must ask whether the officers' belief that Defendant was inside 2652 Meister Road was an objectively reasonable belief given the circumstances known to the officers at the time. *See United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought."); *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998) ("A determination of probable cause simply requires consideration of whether there were reasonable grounds to believe at the time of the affidavit that the law was being violated on the premises to be searched.").

> 2.     *The Officers Possessed an Objectively Reasonable Belief That Defendant Was Present at 2652 Meister Road*

When the LASSO task force entered the Meister Road residence, it possessed at least two, independent factual bases for believing that Defendant was present in the home. The initial telephone call to Defendant's probation officer indicated that Defendant had been at the residence

within the past two hours. Although Defendant argues that this was an anonymous tip upon which the officers unreasonably relied, there was substantial corroborating evidence to back up the tip. First, the call came to Fitzgerald, Defendant's parole officer, indicating some level of knowledge about Defendant on the part of the caller. Second, the call relayed information consistent with the officers' knowledge of Defendant, *i.e.*, his involvement with drugs. The information conveyed by the caller was further corroborated by the LASSO surveillance team in the statement and identification obtained from Garcia. Garcia identified Defendant as being present in the home. Although Defendant argues that Garcia was merely telling the officers what they wanted to hear, and that the showing of a single picture to Garcia was impermissibly suggestive, the fact that Garcia identified Defendant by his known alias of "Meaty," without prompting by the officers, belies Defendant's objections. The officers thus had two bases for believing Defendant was inside 2652 Meister Road: the telephone call and Garcia's identification. The officers therefore had an objectively reasonable basis for believing Defendant was present at 2652 Meister Road when the officers entered.

## II.

## CONCLUSION

I agree with the majority that Defendant in the instant case cannot assert the Fourth Amendment interests of the third-party homeowner. However, I differ with the majority in that the "reason to believe" standard of *Payton v. New York* is the functional equivalent of probable cause. Because the officers in the instant case had probable cause to believe Defendant was inside 2652 Meister Road when they entered, I would affirm the district court.