GRIFFIN, Circuit Judge,
dissenting.
I respectfully dissent. Because the district court did not clearly err in its fact finding and correctly applied the law, I would affirm its denial of defendant Shaw’s motion to suppress the cocaine evidence. In addition, I would affirm defendant’s within-Guidelines sentence.
I.
“When reviewing the denial of a motion to suppress, this [c]ourt reviews a ‘district court’s findings of fact for clear error and its conclusions of law de novo,’ considering the evidence ‘in the light most likely to support the district court’s decision.’ ” United States v. Pruitt, 458 F.3d 477, 480 (6th Cir.2006) (quoting United States v. Hurst, 228 F.3d 751, 756 (6th Cir.2000)). A factual finding is clearly erroneous when, “ ‘although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” Id. (quoting United States v. Navarro — Camacho, 186 F.3d 701, 705 (6th Cir.1999)).
The findings of facts that we must accept, unless clearly erroneous, are set forth in the district court’s order adopting the report and recommendation of the magistrate made following an evidentiary hearing. The factual findings of particular significance are as follows:
On October 28, 2008, the Shelby County Sheriffs Department assigned Officer Harold Cheirs (“Officer Cheirs”) to serve a valid arrest warrant on Phyllis Brown (“Brown”) at 3171 Hendricks Avenue. Upon arriving at the location, Officer Cheirs and Officer Robinson found two homes with an address of 3170 Hen *671 dricks, and no home with an address of 3171 Hendricks. Among the two houses, the officers chose to approach the house with signs of activity, an open front door, and several cars parked in front. Officer Cheirs testified that he would first attempt to “make contact” with the inhabitants and then investigate outside the home if unable to do so. Officer Cheirs, dressed in his police uniform, proceeded to the back of the house and knocked on the door. Stephanie Harris (“Harris”) opened the door and slammed it in his face. Officer Cheirs believed, however, that the black female who slammed the door in his face was Phyllis Brown, the subject of the arrest warrant.[1] He alerted Officer Robinson of what occurred and knocked again. Harris did not open the back door of the house until seven or eight minutes had passed. In the meantime, Officer Cheirs observed “a couple people in the living room, people in the kitchen area and stuff on ... scales on the table.” Officer Cheirs testified that he did not go in the house at this moment for safety reasons, but was “kind of half and half’ in the doorway so that “[t]hey couldn’t close the door on [him].” He announced that “we got a warrant for this address” and asked “who all lives here” and “who’s the owner?” Harris identified herself as a resident, but none of the occupants clarified who owned the house. When Harris asked what address Officer Cheirs was looking for, he replied 3170 Hendricks, instead of the 3171 Hendricks address on the warrant. Officer Cheirs testified that he did so because in his experience people often lie “when you are looking for a particular address,” and he sought to elicit the address of the premises. Harris told him that the address was 3171 Hendricks, and “then everybody else said 3171.” In light of this comment and the suspicious activity he observed, Officer Cheirs “believed that it was the correct address at that time.”
(Internal record citations omitted; emphasis added.)
After its review of the evidence presented at the evidentiary hearing, the district court correctly followed the authority of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), in ruling that Shaw’s Fourth Amendment rights were not violated by the subsequent discovery of the cocaine during the entry into the residence in execution of the arrest warrant. In Payton, the Supreme Court held that, “for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.” Id. at 603, 100 S.Ct. 1371. In Pruitt, we expressly applied a “reasonable belief’ standard for the entry of a dwelling pursuant to an arrest warrant. Pruitt, 458 F.3d at 485. In doing so, we rejected the approach utilized by the Ninth Circuit which equated “reasonable belief’ with “probable cause.” Id. at 483; see United States v. Gorman, 314 F.3d 1105, 1111 (9th Cir.2002). Although in dicta the panel majority in United States v. Hardin questioned the binding effect of Pruitt's interpretation of Payton, 539 F.3d 404, 416 n. 6 (6th Cir.2008), Pruitt remains controlling: “we hold that an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating *672 the totality of the circumstances, establish a reasonable belief that the subject of the arrest warrant is within the residence at that time.” Pruitt, 458 F.3d at 483.
As Pruitt made clear, the “reasonable belief’ standard is different and less demanding than the “probable cause” standard. Id. at 484. While “probable cause” is a “fair probability,” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), “reasonable belief’ is an actual belief, rationally drawn through a common sense evaluation of the circumstances presented. See Pruitt, 458 F.3d at 483. Thus, the “fair probability” standard of probable cause as defined by Gates does not apply in this case.
Here, the district court found, as a matter of fact, that when the African-American woman slammed the door in his face, Officer Cheirs believed that he had found the subject of the arrest warrant, Phyllis Brown. Although it was subsequently shown that Officer Cheirs was mistaken, his belief was actual and based on a rational assessment of the circumstances. Because two houses had the address of 3170 Hendricks, and therefore one of them must have been 3171 Hendricks (the believed residence of arrest warrant subject Brown), the officers had a fifty-percent chance of knocking on the right house. While fifty percent may not pass the “probable cause” standard, it certainly passes the “reasonable belief’ standard, particularly in view of the ongoing activity within the home.
Most importantly, the police were not executing a search warrant on a particular residence. Rather, they were executing an arrest warrant for a person: Phyllis Brown, whose last known address was 3171 Hendricks. Brown had previously evaded the authorities by failing to appear at a state court proceeding on a underlying charge of criminal trespass. In the present case, the black woman who answered the door of 3170 Hendricks slammed it in the face of the uniformed police officer. At the evidentiary hearing, Officer Cheirs testified that the woman’s defiance reinforced his belief that he had found Brown, explaining that “when people do something like that, I mean like close the door on me, I’m thinking that, well, we got one fixing to run or something, fixing to hide.” In this regard, Officer Cheirs reasonably concluded that the woman’s evasion to him as a uniformed police officer was consistent with someone who was the subject of an arrest warrant issued for failing to appear on a criminal trespass charge. Pursuant to Payton and Pruitt, no Fourth Amendment violation was committed because Officer Cheirs’s belief was rationally drawn from a common sense evaluation of the circumstances.
The majority avoids this conclusion by holding that the officers acted without reason in executing the arrest warrant. I disagree. With the benefit of hindsight, the majority notes many investigative checks the police “could” have performed to confirm with certainty that the person whom the police thought was Phyllis Brown, was in fact her. However, the determination of reasonable belief is based on real-world circumstances, not hypothet-icals. See United States v. Bervaldi, 226 F.3d 1256, 1266 (11th Cir.2000). Caution must be exercised before second-guessing what police officers could or should have done. See, e.g., United States v. Lovelock, 170 F.3d 339, 344 (2d Cir.1999) (“[T]he constitutional requirement is that [police officers] have a basis for a reasonable belief as to the operative facts, not that they acquire all available information or that those facts existf.]”); see also Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
*673 My colleagues raise the bar by creating an impossible and unique standard for the Fourth Amendment: because the officers got it wrong and “could have” done more to get it right, the Fourth Amendment is violated and the exclusionary rule applies. This absolutist approach is naive and contrary to the Constitution. If accepted by our circuit, it will devastate practical law enforcement.
The majority also questions the lawfulness of the ruse engaged by Officer Cheirs in responding with the wrong address when asked for what address he was looking. The only authority cited by the majority are inapplicable cases dealing with improperly obtained consents to search. However, this is not a case adjudicating a subject’s consent to search. Instead, it involves the standard governing the entry of a dwelling pursuant to a valid arrest warrant. See United States v. Alejandro, 368 F.3d 130, 137-38 (2d Cir.2004) (“There is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant.” (internal quotation marks and citation omitted)); United States v. Michaud, 268 F.3d 728, 731, 733 (9th Cir.2001) (defendant’s objection to police officers’ use of deception during the execution of an arrest warrant described as “unavailing” given the existence of a valid arrest warrant). The issue of consent is simply not relevant because the Fourth Amendment allows officers to enter private residences without consent to execute an arrest warrant, provided the officers had a reasonable belief that the target of that warrant lived at the residence entered and was present at that time. El Bey v. Roop, 530 F.3d 407, 416 (6th Cir.2008). That is the case here.
II.
Next, the district court correctly held in the alternative that, even if the officers had conducted an improper search, the drugs discovered during that search “would not be subject to suppression because of the officers’ good faith reliance on their mistaken identification of Harris as their suspect.” The district court explained:
The exclusionary rule is intended to “deter deliberate, reckless, or grossly negligent conduct.” Herring v. United States, [555 U.S. 135] 129 S.Ct. 695, 702 [172 L.Ed.2d 496] (2009) (holding that the exclusionary rule does not apply to seized evidence during a search incident to arrest where the officers mistakenly believed the defendant had an outstanding search warrant). Here, suppression would serve no great deterrent effect where Officers Cheirs and Robinson shared the good faith belief that they were at the correct house and also exercised restraint in searching the house until they obtained a search warrant.
Again, I agree with the ruling of the district court.
The majority conclusorily dismisses the good faith exception to the exclusionary rule. However, assuming, arguendo, that the officers violated Shaw’s Fourth Amendment rights, application of the exclusionary rule is not warranted. “[Suppression is not an automatic consequence of a Fourth Amendment violation.” Herring, 129 S.Ct. at 698. “To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.” Id. at 702. The rule serves to deter deliberate, reckless, or grossly negligent conduct, and, in some circumstances, recurring or systemic negligence. Id.
Here, the record demonstrates an absence of deliberate, reckless, or grossly negligent conduct. At worst, the officers *674 had a valid arrest warrant and negligently served it on the wrong house. Suppression serves no appreciable deterrent effect given the officers shared a good-faith belief that, based on a totality of the circumstances, they were at 3171 Hendricks Avenue. They also exercised restraint in their protective sweep of the residence until they obtained a search warrant. Moreover, they halted their sweep once they learned that they were at the wrong house. Any error on the part of the officers was not premeditated, reckless, or grossly negligent. Nor was their conduct sufficiently culpable to justify the principal cost of applying the exclusionary rule. Accordingly, I conclude that this is not an appropriate case for deterrence and suppression is not warranted.
III.
Shaw also argues that his sentence is substantively unreasonable. First, he asserts that the district court impermissibly attempted to “make up” for perceived lapses in the state criminal justice system by declining to consider a sixty-month sentence. Shaw claims that because the district court suggested that state court punishments were lax as compared to the federal system, it harshly sentenced Shaw to “make up the difference.” Second, he argues that the district court refused to “even consider” his individual characteristics until the 18 U.S.C. § 3553(a)(2)(C) analysis.
We review a district court’s sentencing decision for substantive reasonableness under the abuse-of-discretion standard. United States v. Jones, 641 F.3d 706, 711 (6th Cir.2011). “[A] sentence within a properly calculated Guidelines range is presumed to be reasonable.” United States v. Rosenbaum, 585 F.3d 259, 267 (6th Cir.2009). “A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor.” United States v. Camiscione, 591 F.3d 823, 832 (6th Cir.2010) (citation and internal quotation marks omitted).
Shaw has not rebutted the presumption that his within-Guidelines sentence is substantively reasonable. His first argument apparently originates from the parties’ discussions with the district court about how the state system punishes defendants less severely than the federal system for similar crimes. Shaw cannot fairly extract from this conversation the proposition that the district court sentenced him within the Guidelines to deliberately “send a message” to the state court system. It does not follow from the district court’s apparent disapproval of a state court sentencing regime that a within-Guidelines sentence is substantively unreasonable. Nothing in the record supports Shaw’s speculation that the district court “refused to even consider a variance” because it was preoccupied with “making up” for perceived inadequacies in the state system.
Contrary to his second argument, the sentencing transcript reveals that the district court thoroughly reviewed and considered Shaw’s individual circumstances. It contains numerous examples of how the court factored Shaw’s background and characteristics in the § 3553(a) analysis, not just during the § 3553(a)(2)(C) discussion as Shaw claims. Accordingly, Shaw has failed to rebut the presumption that the district court’s within-Guidelines sentence was substantively reasonable.
IV.
For these reasons, I respectfully dissent and would affirm.

. Officer Cheirs testified that he could not recall whether he had seen a photo of Brown, whether he “pulled her booking photo,” whether any photo was attached to the arrest warrant, or whether he did any further search to obtain a photo.