NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0104n.06

Case No. 25-5526

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 05, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) ) | COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| SOCRATES MARTINEZ-HIPOLITO, | ) ) | |
| Defendant-Appellant. | ) ) ) ) | OPINION |

Before: GILMAN, KETHELEDGE, and HERMANDORFER, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** In May 2025, Socrates Martinez-Hipolito (Socrates) was sentenced to 120 months of imprisonment after entering a conditional guilty plea to the offense of producing child pornography. The sole issue on appeal relates to the validity of the search warrant that led to the discovery of the child pornography on Socrates's electronic devices. Because we find no error in the district court's decision to not suppress the evidence uncovered as a result of the search warrant, we **AFFIRM** the judgment below.

## I. BACKGROUND

Socrates and his brother Hafit Martinez-Hipolito (Hafit) are known members of the Ambrose Street Gang in Lexington, Kentucky. In August 2021, Hafit was arrested and taken into federal custody for violating the terms of his supervised release that followed a prior conviction. He was again placed on supervised release starting in January 2023. Hafit submitted several

supervision reports to the United States Probation Office in connection with his renewed release. The reports listed his address as 2027 Cummins Court, Apt. 4, in Lexington, Kentucky. This was the address at which he was arrested in 2021. Hafit also verbally informed his probation officer that he would be living with his brother Socrates at that address.

When Hafit subsequently violated the terms of his renewed supervised release, a warrant was issued for his arrest. Seeking to execute the warrant, the United States Marshals Service contacted the Probation Office for information about Hafit. The Probation Office provided the Marshals Service with the 2027 Cummins Court address and reported that Hafit was unemployed. The Marshals Service accordingly attempted to execute the warrant at that address on February 15, 2023.

At approximately 9:30 a.m. on that date, a group of deputy marshals, assisted by officers from the Lexington Police Department, arrived at 2027 Cummins Court, knocking and announcing their presence. They received no response even after knocking for approximately ten minutes. But the officers heard footsteps and movement near the door, which indicated that people were inside. They thus decided to forcibly enter the apartment.

Upon entering, the officers found three individuals, including Socrates. They also observed ammunition, marijuana, and drug paraphernalia in plain view. But Hafit was not present. Socrates informed the officers that Hafit did not reside at 2027 Cummins Court, but instead lived with their other brother at an address on Dix Drive in Lexington, Kentucky. Upon hearing this information, the officers ascertained that Hafit had once listed the Dix Drive address on a probation data-collection form. The officers consequently left the apartment and attempted to locate Hafit at the Dix Drive address.

In the meantime, officers from the Lexington Police Department obtained a warrant to search the 2027 Cummins Court apartment based on the paraphernalia that they had observed in plain view. The search yielded a variety of evidence relating to drugs, firearms, and gang-related activities. The search warrant also authorized the officers to examine Socrates's electronic devices, which revealed that Socrates possessed videos of himself having sex with a 16-year-old girl. The FBI subsequently seized these materials via a federal search warrant, resulting in the government charging Socrates with producing child pornography, which is a violation of 18 U.S.C. § 2251(a).

Socrates moved to suppress the evidence seized from his electronic devices. When the district court denied his motion, Socrates entered a conditional guilty plea that reserved his right to appeal the court's suppression ruling. The court entered final judgment in May 2025 and sentenced Socrates to 120 months of imprisonment. This timely appeal followed.

## II.    ANALYSIS

### A.    Standard of review

"When reviewing an order denying a motion to suppress evidence, we use a *de novo* standard for the district court's legal determinations, but will not set aside the district court's factual findings unless they are clearly erroneous." *United States v. Shank*, 543 F.3d 309, 312 (6th Cir. 2008). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). "The evidence is reviewed 'in the light most likely to support the district court's decision.'" *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019) (quoting *United States v. Powell*, 847 F.3d 760, 767 (6th Cir. 2017)). And "a denial of a motion to suppress will be

affirmed on appeal if the district court's conclusion can be justified for any reason." *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994).

**B.      The district court did not err in denying Socrates's motion to suppress**

"In order to deter law enforcement officials from violating the Fourth Amendment . . . , the Supreme Court has directed that 'all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court regardless of its source.'" *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (quoting *Mapp v. Ohio,* 367 U.S. 643, 654 (1961)).  "This exclusionary rule is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)).

The evidence that Socrates seeks to suppress was seized pursuant to a search warrant issued after law-enforcement officers observed criminal paraphernalia in his apartment when attempting to arrest his brother Hafit.  Socrates thus contends that this evidence is "fruit of the poisonous tree" because the officers' initial entry into his apartment was allegedly unconstitutional.

We disagree.  "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980).  "This court has elaborated on this principle, holding that 'an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish a reasonable belief that the subject of the arrest warrant is within the residence at that time.'" *El Bey v. Roop*, 530 F.3d 407, 416 (6th Cir. 2008) (quoting *United States v. Pruitt*, 458 F.3d 477, 483 (6th Cir. 2006)).  In other words, law-enforcement officers may lawfully enter a residence to execute an arrest warrant if they have "a reasonable belief both (1) that

[the suspect] lived at the [] residence, and (2) that [the suspect] was inside the residence at the time that they entered." *Id.* (Our circuit has not decided whether "reasonable belief" requires probable cause or some lower level of suspicion. *See United States v. McKenzie*, 33 F.4th 343, 348–49 (6th Cir. 2022); *United States v. Baker*, 976 F.3d 636, 642 (6th Cir. 2020). But we need not answer that question because the result here is the same under both standards.)

Socrates does not dispute that the law-enforcement officers had a reasonable belief that Hafit lived at the 2027 Cummins Court apartment. Instead, his sole argument on appeal is that the officers could not have reasonably believed that Hafit was inside the apartment at the time that they entered. We conclude otherwise, however, after viewing the evidence in the light most favorable to the district court's decision.

First, one of the officers who entered Socrates's apartment testified at the suppression hearing that the Marshals Service typically relies on information provided by the Probation Office to determine a suspect's location. Accordingly, because 2027 Cummins Court was the only address for Hafit that the Probation Office provided to the Marshals Service, the officers had reason to believe that they could find him at the apartment located there.

Socrates notes, however, that Hafit had previously listed a different address on a probation data-collection form. But that form was not the proper method for him to register a change of address with the Probation Office. In any event, Socrates concedes that the law-enforcement officers reasonably believed that 2027 Cummins Court was Hafit's residence. Socrates acknowledges that this reasonable belief "increases the likelihood" that Hafit "c[ould] be found" there. *See United States v. Vasquez-Algarin*, 821 F.3d 467, 481 (3d Cir. 2016).

Second, multiple officers testified that, after they knocked and announced their presence, they heard footsteps and movement near the door. This indicated that there were people inside the

apartment. Given the officers' reasonable belief that Hafit lived there, they had every reason to think that he was among the occupants. *See Pruitt*, 458 F.3d at 483 (explaining that the sound of a television from inside the house and the presence of a car in the driveway gave rise to a reasonable belief that the suspect was at home (citing *United States v. Route*, 104 F.3d 59, 62–63 (5th Cir. 1997))).

Third, law-enforcement officers had previously arrested Hafit at that very apartment in August 2021. Two of the officers who had participated in the 2021 arrest were in fact present during the later attempted arrest in February 2023. These officers testified that, during the 2021 arrest, Hafit did not respond for "well over five minutes" after officers knocked and announced their presence, and that Hafit seemed "[v]ery reluctant" to open the door. Consequently, when no one answered the door for approximately ten minutes after the officers knocked and announced their presence in February 2023, the officers could have reasonably believed that Hafit was similarly attempting to avoid contact. This would be consistent with his prior conduct at the same residence. *See United States v. Barrera*, 464 F.3d 496, 504 (5th Cir. 2006) (noting that law-enforcement officers' reasonable belief that a suspect was inside a residence was bolstered by the suspect's previous arrest at the same location).

Finally, the timing of the officers' entry based upon Hafit's lack of employment further supported the likelihood that he would be present in the apartment. *See El Bey*, 530 F.3d at 417 (noting that "the 'suspect's presence may be suggested by . . . the time of day [and] the circumstances of a suspect's employment'" (quoting *Valdez v. McPheters,* 172 F.3d 1220, 1226 (10th Cir. 1999))). One of the officers testified that, "generally, [unemployed] individuals that I deal with will sleep late and maybe go look for work later in the day." Because the Probation Office reported that Hafit was unemployed, the officers' morning visit to the apartment was based

on the reasonable assumption that Hafit would be at home. *See Pruitt*, 458 F.3d at 483 (explaining that an informant's tip that the suspect was unemployed and liked to sleep late was sufficient to establish reasonable belief that the suspect was in the apartment (citing *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995))).

Socrates nevertheless argues that "more is required to establish a reasonable belief that Hafit [] was inside [the] apartment than that it was mid-morning and he had no job." But Socrates cites no authority in support of that contention. And, in any case, this argument overlooks the additional factors supporting the officers' reasonable belief—namely, the address information provided by the Probation Office, the sounds of movement coming from inside the apartment, and the circumstances surrounding Hafit's prior arrest at the same location.

Socrates also contends that, even given these facts, Hafit "could just as easily been" elsewhere. But we are aware of no authority requiring law-enforcement officers to rule out all other possibilities regarding a suspect's location before entering the residence in question. *See Illinois v. Rodriguez*, 497 U.S. 177, 184 (1990) (explaining that "reasonableness" under the Fourth Amendment "does not demand that the government be factually correct in its assessment" regarding "what a search will produce"); *United States v. Rohrig*, 98 F.3d 1506, 1524 (6th Cir. 1996) (explaining that the Fourth Amendment requires officers to act only "reasonably," not "flawlessly.").

In sum, "looking at common sense factors and evaluating the totality of the circumstances," *Pruitt*, 458 F.3d at 483, we conclude that the law-enforcement officers had a reasonable belief (and even probable cause) both that Hafit lived at the 2027 Cummins Court apartment and that he would be present when the officers entered the apartment on February 15, 2023. The officers' entry into

the apartment was accordingly not unconstitutional, so the evidence against Socrates derivatively

obtained from that entry was not subject to being suppressed as "fruit of the poisonous tree."

### III.    CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.