NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0314n.06

No. 08-3983

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**May 24, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LAVELLE BLOCK | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant–Appellant. | ) | |
| | ) | |
| | ) | |

Before: GIBBONS, ROGERS, and KETHLEDGE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** After entering a conditional plea of guilty, defendant–appellant Lavelle Block appeals the district court's denial of his earlier motion to suppress evidence obtained during the search of a companion's home pursuant to an arrest warrant. He argues: (1) that the officers did not have probable cause to believe that he was present in the apartment, and (2) that the consent of his companion, the lessor of the apartment, was not voluntarily given. Because both of these contentions are meritless, we affirm the district court's order.

I.

In July 2006, the Ohio state police issued several arrest warrants for Lavelle Block but were unable to locate him. FBI Agent Michael Domonkos was brought in to head a Fugitive Gang Task Force in pursuit of Block. Domonkos received information that Block was staying at his girlfriend's address. When the task force went to the address, Tiffany Pleasure answered the door and informed

Domonkos that Block was not present. Domonkos later learned from a source that Block had jumped out of a window as the FBI arrived. In December 2006, the task force received a tip that Block might be staying with Minnie Brown at a particular address and that he was driving a particular car. Although the address given by the informant did not exist, Domonkos did find an address two doors down where Block was staying. The task force later received a tip on the license plate of the car, which was registered to Minnie Brown.

The morning of December 19, 2006, Domonkos and eight to ten other agents set up surveillance on the address and vehicle. One of the other agents spoke with the residence's management, which informed him that "Miss Pleasure" was the leaseholder of the apartment. Although Pleasure later testified that it was actually her sister who was the leaseholder, she also testified that she lived in the apartment with her sister, who was not present on the day of the search. After setting up a perimeter and knocking on the door, the agents heard noise from the house of "someone moving, running inside." Domonkos looked up to the second floor window and saw someone look out who "appeared to be Mr. Block" and whom Domonkos recognized from pictures of Block he reviewed in the course of his investigation. After waiting a bit longer, the agents forced entry and encountered Pleasure coming down the stairs. They proceeded to secure the premises and found Block at the top of the stairs. In the course of searching the apartment for officer safety, the agents saw a large amount of cash sitting on a shelf of an upstairs walk-in closet. They came back downstairs, frisked Block, discovered a small amount of marijuana, and arrested him.

Domonkos then obtained written consent from Pleasure to search the apartment. There was some conflicting testimony as to the nature of the consent. Domonkos testified that he did not

2

pressure Pleasure into giving consent and made no threats. Pleasure, on the other hand, testified that, although the atmosphere in the room was calm and Domonkos made no threats, she felt that she had to sign the consent form because "that's what [she] thought [she] was supposed to do" and it was "what the officer told [her] to do." She also testified that she signed the form after the police had already conducted a full search of the apartment. In any event, the agents searched the house and found the cash discussed above and a white mixing bowl containing 101.78 grams of crack cocaine. Block admitted that both belonged to him, and the agents then took him to jail.

On March 13, 2007, Block was indicted on one count of possession with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Block moved to suppress any evidence obtained during the search of the apartment on the grounds that the search was conducted without a warrant, probable cause, or valid consent.[1] The district court held a suppression hearing on December 13, 2007, and denied the motion from the bench. The district court found that the initial search of the apartment for safety was permissible and that the money that the agents saw in the closet caused them to want to search the house more thoroughly. The court then held that Block had no standing to object to the search because the apartment was not his and he had no expectation of privacy. Even if he did have standing, however, the district court also held that Pleasure gave consent to search. In making this last finding, the district court acknowledged the disputed versions of events given by Domonkos and Pleasure, but found that, in light of the signed consent form, the consent was knowing and voluntary.

---

[1]Block also moved to suppress various statements that he gave to the police on *Miranda* grounds, but that issue is not raised on appeal.

On April 23, 2008, Block entered a conditional plea of guilty under which he retained his right to appeal the denial of his motion to suppress. On August 7, 2008, Block was sentenced to 240 months' imprisonment, from which he timely appealed. Block now argues that the district court erred in denying his motion to suppress because (1) the agents lacked probable cause to believe that he was inside the apartment and therefore lacked authority to enter, and (2) that the consent given by Pleasure was not knowing or voluntary.

## II.

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000) (citations omitted). The evidence must be viewed "in the light most likely to support the district court's decision." *Id.* (citation and internal quotation marks omitted). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999) (citation omitted). We afford "deference to the district court's assessment of credibility inasmuch as the court was in the best position to make such a determination." *United States v. Garrido*, 467 F.3d 971, 977 (6th Cir. 2006) (citation and internal quotation marks omitted).

## III.

### A.

Block first argues that the evidence found during the search of the residence should be suppressed because, before entering, the police lacked probable cause to believe that Block was

present. "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). When law enforcement must enter a third party's house to execute an arrest warrant, it is "an open question in our circuit" whether the officers need a reasonable belief or probable cause to believe the suspect is present in the house before entry. *United States v. Hardin*, 539 F.3d 404, 426 (6th Cir. 2008). Although it was presented with the issue, the *Hardin* court held that it need not decide which standard applies because the law enforcement officers in that case had neither probable cause nor reasonable belief that their target was in the house before searching. *Id.*

We similarly decline to decide which standard applies because the agents in this case had sufficient evidence to form either a reasonable belief or probable cause to believe Block was present in the apartment. The agents had a tip from an informant that Block was staying at an address two doors down from where he was found. After locating the right address, the building manager confirmed that the apartment was rented to a Miss Pleasure, whose name the agents recognized from an earlier attempt to apprehend Block. The license plate for the car that Block was purportedly driving was registered to the same woman with whom the informant said Block was staying. Finally, and most important, Domonkos saw Block in the window of the apartment after knocking on the door. Block argues that Domonkos did not have sufficient familiarity with his appearance to recognize him in a second story window, but the record reveals that Domonkos had studied Block's pictures in preparation for his search. It is not necessary for Domonkos to have been certain that the man he saw was in fact Block; it is enough for the person Domonkos saw to be similar enough in

appearance to Block to give Domonkos at most probable cause to believe it was Block. *See El Bey v. Roop*, 530 F.3d 407, 418 (6th Cir. 2008) (holding that officers need only have a reasonable belief that they saw the target of their arrest warrant before entering a house in an attempt to execute the warrant).[2] Law enforcement in this case had sufficient evidence to establish even the higher standard of probable cause to believe that Block was in the apartment. Therefore, we affirm the district court's denial of the motion to suppress on this ground.

B.

Block next contends that the evidence found during the search should have been suppressed because the consent given by Pleasure was not voluntary. The government first argues, as the district court found in the alternative, that because the search occurred at a residence that did not belong to Block, he does not have standing to challenge the legality of the search. Because the record is not sufficiently developed to allow us to make a determination as to whether Block had a reasonable expectation of privacy in Pleasure's home, and because the merits of the issue are straightforward, we will assume without deciding that Block's Fourth Amendment rights were implicated by the search.

"[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). It follows that the district court's findings as to the validity of a person's consent "will not be reversed unless clearly

---

[2] *El Bey* was decided before *Hardin* so it is not clear how or whether the *El Bey* "reasonable belief" standard might change in light of *Hardin*.

erroneous." *United States v. Calhoun*, 49 F.3d 231, 234 (6th Cir. 1995) (citations omitted). "[N]ot any type of consent will suffice, but instead, only consent that is 'unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion.'" *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (quoting *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992)). Factors to be considered are "the characteristics of the [party who allegedly consented], including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; and whether the individual understands his or her constitutional rights." *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998) (citation omitted). Further, we consider "the details of the detention, including the length and nature of detention; the use of coercive or punishing conduct by the police; and indications of more subtle forms of coercion that might flaw an [individual's] judgment." *Id.* (citations and internal quotation marks omitted) (alteration in original).

The district court found that, despite the various contradictions between Domonkos's and Pleasure's testimony, the consent given by Pleasure to search the residence was voluntary. The district court specifically pointed to the presence of the signed consent-to-search form as persuasive evidence of consent, noting that the court would not "believe that [she] didn't read or understand it, just willy-nilly signed a form." This factual finding was not clearly erroneous. Pleasure did testify that Domonkos gave her the form to sign only after he had searched the house and discovered the cocaine and cash. She also said that she signed the form because the police told her to and she thought she was supposed to do so. However, Pleasure also testified that the agents never used threats against her and that the atmosphere in the room was calm when she signed the form. Further, Pleasure's age and education weigh in favor of affirming as well; Pleasure was twenty-seven years

old and had a high school diploma. Considering the factors enumerated above, we hold that the characteristics of Pleasure, the details of the detention, and the actions of the agents do not create "a definite and firm conviction that a mistake has been committed" by the district court. We therefore affirm the district court's denial of the suppression motion.

IV.

For the reasons discussed above, we affirm the judgment of the district court.