**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0036n.06

**Case No. 16-5171**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jan 17, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| JARVIS LEWIS, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:    COLE, Chief Judge; BOGGS and SILER, Circuit Judges.

COLE, Chief Judge.  Police officers arrested Jarvis Lewis under an arrest warrant after they entered his girlfriend's apartment without a search warrant.  During the arrest, officers discovered ammunition and a firearm in the apartment.  A jury subsequently found Lewis guilty of being a felon in possession of a firearm and a federal district court sentenced him to 120 months of imprisonment.  Lewis appeals on several grounds, arguing that the district court erred by applying the wrong standard for a warrantless entry and by finding that the firearm was discovered during a valid protective sweep.  Lewis further argues that the district court erred in admitting into evidence statements by witnesses who did not appear at trial and an audio recording and matching transcript from a call between Lewis and another individual.  Lewis also

argues that there was insufficient evidence to show constructive possession of the firearm and that the district court violated his rights by refusing to grant him credit for acceptance of responsibility in his sentencing. Finding no reversible error, we affirm the district court's conviction and sentence.

## I. BACKGROUND

In 2014, Lewis had outstanding arrest warrants. In mid-October of that year, officers with the Memphis Police Department received a call reporting that Lewis was at an apartment in the Ridgecrest Apartments complex. The officers visited the apartment, where Kenya Baskin, Lewis's girlfriend and the leaseholder of the apartment, answered the door. Baskin told the officers that she was Lewis's girlfriend and that Lewis was not in the apartment. After receiving Baskin's consent to look around the apartment, officers entered a bedroom and saw Lewis exiting through a window. The officers chased Lewis on foot, but were unable to apprehend him.

On October 27, 2014, the police received a call reporting shots fired at the same apartment complex. The caller did not identify any particular persons as involved in the shooting. However, by their admission at trial, officers involved with the search for Lewis recognized the address reported in the call and responded with the aim of apprehending him. After arriving at the address, the officers surrounded the apartment building and questioned witnesses standing outside. The witnesses reported seeing two males with guns fleeing from the scene of the shooting into Baskin's apartment. After officers showed witnesses a police photograph of Lewis from a county warrant website, a witness confirmed that Lewis was one of the two individuals that he or she had seen running into the apartment.

Without obtaining any names or identification from the witnesses, the officers approached the apartment. After knocking on the apartment door for some time without a response, the officers requested a fugitive-arrest team to assist with the entry and arrest. While waiting for the arrest team to arrive, officers witnessed someone looking out of the window of the apartment but were unable to identify the person. Once the arrest team arrived, the officers entered the apartment and quickly arrested Lewis and his friend, Reginald Perkins, in a rear bedroom.

At approximately the same time that officers discovered Lewis and Perkins in the bedroom, an officer searching the kitchen for hidden individuals found a firearm sticking out of the top of a sugar bag stored in a double-doored cabinet under the sink. Once the arrests were complete, the arresting officers rejoined other officers in the apartment still searching for others who may have been hiding. During the secondary search, officers found two types of ammunition on the floor of the bedroom closet. One was of the type used for the firearm discovered in the kitchen.

Before trial, Lewis moved to suppress evidence resulting from the warrantless entry. To show standing for his motion, Lewis argued that he had a reasonable expectation of privacy as he was a regular overnight guest with a key to the apartment, the assistant manager of the apartment complex and a neighbor believed Lewis was living in the apartment, and several photographs of Lewis and Baskin were in the apartment. Based on this alleged standing, Lewis argued that the officers were prohibited from entering the residence because they lacked the exigent circumstances necessary to do so. In addition, he asserted that the search of the kitchen was impermissible because it was not an area immediately adjacent to the arrest and there was no reason to believe individuals posing a threat to officers were elsewhere in the apartment.

At the suppression hearing, Lewis retreated from his earlier arguments regarding standing, maintaining that he was only a regular visitor, as opposed to a resident, and therefore the officers did not have a reasonable belief that he was in the apartment. When the prosecution questioned one of the officers regarding their conversations with unidentified neighbors, Lewis objected on the ground that the neighbor statements were hearsay. After considering the testimony of other witnesses and oral argument, the district court found that both the entry into the apartment and the search of the kitchen were valid.

At trial, Lewis challenged whether there was sufficient evidence that he possessed the firearm discovered by police. He argued that the officers had failed to identify any fingerprints, DNA, or other evidence that showed the firearm belonged to or was ever possessed by him. Perkins and Baskin testified that neither of them owned the firearm or knew of its existence, and admitted upon questioning that there were several individuals who would visit the apartment on a regular basis. Baskin testified that Lewis's address was another residence, but stated that Lewis was the only other person with access to the closet where the ammunition was discovered and that others would not have been able to place the firearm in the kitchen without Lewis letting them into the apartment.

The prosecution then sought to play a recorded jail call between Lewis and Perkins during which Perkins discussed how police failed to find a gun after he hid it and Lewis responded that he should have done the same. Initially, Lewis objected to the admission of the audio, arguing that the recording was incomprehensible. The district judge stated that he could not understand the recording, despite hearing it several times. The prosecution offered to provide a transcript of the recording and the district court approved, noting that it would be useful in determining whether the recording was admissible. After some debate regarding the

basis for admitting the audio, Lewis withdrew his objection, arguing that the recording showed the firearm could have belonged to Perkins. The prosecution then presented the transcript with the audio to one of the officers during questioning. Lewis consented to admitting the transcript after the district court noted that the transcript would be admitted only for assistance in identifying the speakers in the recording.

The jury found Lewis guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). After the trial, Lewis's presentence report ("PSR") calculated his base offense level as 24, under U.S.S.G. § 2K2.1. The PSR then added two offense levels, under U.S.S.G. § 2K2.1(b)(4)(A), because the firearm was stolen. The PSR also noted that Lewis had made no effort to show acceptance of responsibility for the charged offense, and therefore denied a two-point reduction in his offense level, under U.S.S.G. § 3E1.1(a). As a result, the Guidelines range was a term of 120–150 months of imprisonment, based on Lewis's offense level of 26 and a criminal history category of VI.

Lewis objected, arguing that the PSR improperly denied him credit for acceptance of responsibility under U.S.S.G. § 3E1.1(a). After hearing oral argument during the sentencing hearing, the district court overruled Lewis's objection. The district court then adopted the PSR recommendations and sentenced Lewis to the statutory maximum of 120 months of imprisonment.

## II. ANALYSIS

### A. Standard of Review

In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000). We view the evidence in the light most likely to support the district court's

decision, and may consider evidence beyond that reviewed during the motion to suppress hearing. *Id.*; *United States v. McKinney*, 379 F.2d 259, 264 (6th Cir. 1967), *overruled on other grounds by Steagald v. United States*, 451 U.S. 204 (1981).

### B. The Validity of the Warrantless Entry

#### 1. The Witness Statements Were Not Hearsay

Before we turn to whether the entry into the apartment was permissible, we must address Lewis's argument that the statements by unidentified neighbors about Lewis entering the apartment were hearsay. We review the determination of whether a statement is hearsay de novo. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 378 (6th Cir. 2009).

Because the witness statements were not offered as evidence that Lewis was in fact in the apartment, but rather as support for the officers' belief that he was there, the statements fall outside the definition of hearsay. *See* Fed. R. Evid. 801(c).

#### 2. The Officers' Entry Was Valid

In determining whether entry into a third party's residence without a search warrant is proper to arrest the subject of an arrest warrant, we must consider the framework set forth for warrantless entries in *Payton v. New York*, 445 U.S. 573 (1980). *Payton* established a two-part test requiring that officers have a reasonable belief that the subject of the warrant lives at the place of entry and a reason to believe that the subject of the warrant is inside. *El Bey v. Roop*, 530 F.3d 407, 416 (6th Cir. 2008). Accordingly, officers must take steps "to reasonably ensure" that the residence is that of the wanted person and must determine through independent investigation whether the person is inside the premises before entering. *See id.* at 417.

Lewis has not argued that it was unreasonable for officers to believe that he lived at Baskin's apartment. He argues only that the officers lacked a reason to believe that he was present in the apartment at the time of entry. Therefore, the only question is what standard

applies in assessing whether the officers had sufficient reason to believe that Lewis was in the apartment. On this question, we have remained undecided, stating that it is "an open question" whether reasonable belief or probable cause is required. *See United States v. Block*, 378 F. App'x 547, 549–50 (6th Cir. 2010) (quoting *United States v. Hardin*, 539 F.3d 404, 426 (6th Cir. 2008)) (concluding that it was unnecessary to decide which standard applies because there was sufficient evidence to meet either standard).

Like previous courts faced with this question, it is unnecessary for us to determine which standard applies as both standards are met by the facts of this case. In *United States v. Pruitt*, police received an anonymous call, which they believed to be from the suspect's ex-girlfriend, informing them that the suspect was recently seen at a home where he resided. 458 F.3d 477, 478 (6th Cir. 2006). Officers conducted surveillance and witnessed an individual enter and exit the home before stopping that person for questioning a few blocks away. *Id.* at 479. Upon seeing a photograph presented by police, the individual referred to the suspect by his street name and said that he had just seen the suspect inside the residence. *Id.* at 479. We found that the facts supported a reasonable belief that the suspect was inside at the time of entry. *Id.* at 483. In *Hardin*, we noted that the facts in *Pruitt* were also sufficient to meet the higher standard, probable cause. *Hardin*, 539 F.3d at 413–14.

The facts in this case also give rise to probable cause. Indeed, this court emphasized in *Hardin* that "[a] common feature of [cases finding sufficient reason to believe] is recent, eyewitness evidence connecting the suspect to the residence, and often even conduct by the suspect that demonstrates a tie to the residence." *Id.* at 421. Officers previously received a tip that Lewis was at the apartment, knew that it was his girlfriend's apartment, and saw Lewis fleeing from the apartment only a week prior to his eventual arrest. Although the officers did not

identify the person they saw looking out of the window as Lewis, there was a witness, as in *Pruitt*, who identified the suspect from a photograph and told police that he or she had witnessed the suspect enter the apartment shortly after the reported shooting. Given these facts, the record evidence was sufficient for a finding that the officers had both a reasonable belief and probable cause in believing that Lewis was inside of the apartment when the officers entered.

Whether the officers had sufficient reason to believe Lewis was in the apartment when they responded to the reported shooting is irrelevant. The officers were required only to have sufficient reason to believe he was present at the time of entry. *See El Bey*, 530 F.3d at 416.

### C. The Validity of the Protective Sweep

Police officers may conduct a search of areas "immediately adjoining the place of arrest from which an attack could be immediately launched" without probable cause or reasonable suspicion of such an attack. *Maryland v. Buie*, 494 U.S. 325, 334 (1990). Further, officers may extend the protective sweep beyond the immediately adjoining area where there exist "articulable facts" that, when considered with the rational inferences resulting from them, would lead a reasonably prudent officer to believe that area harbors a dangerous person. *Id.* Such an extended protective sweep is limited to those areas where a person may be found, and the search must last no longer than necessary to remove the sense of danger or to complete the arrest and depart the premises, whichever is shorter. *Id.* at 335–36.

Contrary to Lewis's contention that the trial testimony lacked any facts suggesting that a danger existed for officers outside of the room where Lewis and Perkins were arrested, the prosecution notes several facts in support of the officers conducting an extended protective sweep, including that (1) officers believed two individuals in the apartment were involved in a recent shooting incident outside of the apartment involving other individuals; (2) officers were

unaware if other individuals were in the apartment; (3) Lewis and Perkins refused to exit the apartment despite officers repeatedly announcing themselves at the door for over thirty minutes; (4) the officers felt it necessary to wait for the Fugitive Apprehension Team to assist with entering the apartment; (5) officers entered the apartment and searched their assigned areas at nearly simultaneous times; and (6) officers believed the cabinet in the kitchen to be a space in which a person could be hiding based on their prior training and experience. Lewis does not contest any of these assertions. Therefore, there is no reason to believe the district court committed an error in finding that these circumstances supported a valid protective sweep.

### D. The Sufficiency of the Evidence for Constructive Possession

Lewis argues that there was insufficient evidence to sustain a conviction for actual or constructive possession of the firearm, noting that there was no direct physical evidence connecting him to the firearm. However, we have previously held that possession may be proved by direct or circumstantial evidence. *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009). We must review such evidence in the light most favorable to the prosecution in considering whether any rational trier of fact could have found possession, and we draw all available inferences and issues of credibility in favor of the jury's verdict. *See United States v. Caseer*, 399 F.3d 828, 840, 844–45 (6th Cir. 2005) (Boggs, C.J., concurring in part and dissenting in part) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997).

Since there is no assertion that Lewis had actual possession of the firearm, we consider only whether there was sufficient evidence to support the finding that Lewis had constructive possession by "knowingly ha[ving] the power and the intention at a given time to exercise dominion and control over [the firearm], either directly or through others." *United States v.*

*Kelsor*, 665 F.3d 684, 692 (6th Cir. 2011) (citation omitted). Evidence that the defendant "'ha[d] dominion over the premises where the firearm [wa]s located' is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (citation omitted). Mere presence is not enough, but "other incriminating evidence, coupled with presence . . . will serve to tip the scale in favor of sufficiency." *United States v. Birmley*, 529 F.2d 103, 107–08 (6th Cir. 1976).

The totality of the evidence sufficiently supports a finding of constructive possession. Lewis's regular presence in the apartment and the testimony from Baskin confirming that Lewis was the only one with control and access to the apartment on the day of the arrest creates a strong inference of dominion over the apartment, including the area where the firearm was discovered. In addition, a recording and transcript showed Perkins discussing how police failed to find his gun after he hid it and Lewis responding that he should have done the same.

While Lewis disputes the admission of the recording and transcript as evidence because of difficulties in understanding the recording, Lewis's withdrawal of his objection at trial constitutes a waiver of his argument that it was an abuse of discretion. *See United States v. Denkins*, 367 F.3d 537, 544 (6th Cir. 2004) ("[W]e have held that this sort of abandonment of an issue . . . waives any right of appeal on that issue."). Indeed, in addition to withdrawing his objection, Lewis affirmatively argued that the recording supported his case that the firearm belonged to Perkins and not him. Under such circumstances, we find it within the discretion of the district court to have admitted as evidence the recording. Because Lewis waived (rather than forfeited) his objection to the admission of the transcript, we do not even review its admission for plain error, and the issue is resolved as accepted by him below. *See Denkins*, 367 F.3d at 542–43.

The prosecution's argument that the recording showed Lewis admitting that he possessed the discovered gun, coupled with the other evidence showing Lewis's dominion and control over the apartment, provides enough evidence for a rational trier of fact to find beyond a reasonable doubt that Lewis constructively possessed the firearm.

### E.  Sentencing Credit for Acceptance of Responsibility

Lewis's argument that the district court violated his rights by refusing to grant him a reduction in sentencing for acceptance of responsibility under U.S.S.G. § 3E1.1 is meritless.  We review sentencing decisions under a deferential abuse-of-discretion standard and will not overturn unless the district court has committed a clear error.  *United States v. Coppenger*, 775 F.3d 799, 802–03 (6th Cir. 2015).  Lewis does not argue that he pleaded guilty or that he made any other effort to claim responsibility for the offenses charged.  Furthermore, it is well established that the government "may encourage a guilty plea by offering substantial benefits in return for the plea."  *Corbitt v. New Jersey*, 439 U.S. 212, 219 (1978); *see also United States v. Davis*, 170 F.3d 617, 628 (6th Cir. 1999).  Therefore, we find the refusal of sentencing credit under U.S.S.G. § 3E1.1 proper.

### III.  CONCLUSION

For the foregoing reasons, we affirm Lewis's conviction and sentence.