NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0467n.06

No. 21-6137

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Nov 18, 2022 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| JOHN MICHAEL ESSEX, | ) | DISTRICT OF KENTUCKY |
|  | ) |  |
| Defendant-Appellant. | ) | OPINION |
|  | ) |  |

Before: SUTTON, Chief Judge; COLE and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

A jury convicted defendant John Essex of drug trafficking and firearm crimes, and the district court sentenced him to thirty-four years imprisonment. He raises three issues in this appeal: (1) the district court's denial of a motion to suppress evidence; (2) the sufficiency of the evidence supporting his convictions; and (3) the district court's imposition of a two-level sentencing enhancement for obstructing justice. Because these issues are without merit, we affirm.

I.

We first address defendant's contention that the district court erred in denying his motion to suppress evidence. "When reviewing a district court's ruling on a motion to suppress, we will reverse findings of fact only if they are clearly erroneous. Legal conclusions as to the existence of probable cause are reviewed de novo. When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (brackets, internal citations, and quotation marks omitted).

Mercer County Sheriff's Deputy Sean Brown was trying to locate and arrest Patrick Jones, who had an outstanding arrest warrant for first-degree assault. So he patrolled an area where it was known that Jones was staying in Harrodsburg, Kentucky: the property containing the trailer defendant John Essex shared with his girlfriend, Nicole Votaw. Deputy Brown saw Votaw driving a Jeep that Jones was known to drive (and, at the time, believed Jones was in the passenger seat— it was later determined the passenger was Patrick's brother, Derrick). He then observed the car drive through the front yard to the back of the trailer and heard car and trailer doors open and close, indicating that the pair in the Jeep entered the trailer. Brown called for backup and made sure that no one left the trailer while he waited. Like Patrick Jones, Votaw also had an active arrest warrant and Deputy Brown knew that.

Sheriff's Deputy David Prather soon arrived, the two announced their presence, and continually knocked on the trailer's door for several minutes. Essex eventually came out, and, believing Votaw was still in the trailer, Deputy Prather entered, found Votaw showering, and escorted her to the master bedroom to retrieve clothing. Marijuana and drug paraphernalia were in plain view on the nightstand. That contraband formed the factual basis for a later-executed search warrant, during which officers discovered the gun and various drugs supporting defendant's charges (and ultimate convictions) for possessing 50 grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), possessing 40 grams or more of a substance containing detectable amounts of heroin and fentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Essex appeals the district court's order denying his motion to suppress this

evidence, claiming the Fourth Amendment precluded the officers' warrantless entry into the trailer to arrest Votaw.

A law enforcement officer must generally obtain a search warrant to enter a home without consent, *see Lange v. California*, 141 S. Ct. 2011, 2017 (2021), including when entering a third-party's home to look for an arrestee subject to an arrest warrant, *see Steagald v. United States*, 451 U.S. 204, 212–16 (1981). But not so when it is the home of the person subject to the arrest warrant—"[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). This is a two-part inquiry, whereby the officers must have reason to believe the home is the subject's dwelling *and* that the subject is inside. *See El Bey v. Roop*, 530 F.3d 407, 416 (6th Cir. 2008).

Discerning the meaning of *Payton*'s "reason to believe" language (which, importantly, guides our review of these two factors) has eluded our review. In *United States v. Pruitt*, we concluded officers need only satisfy the "lesser reasonable belief standard, and not probable cause . . . to enter a residence to enforce an arrest warrant," which is informed by "common sense factors and evaluating the totality of the circumstances." 458 F.3d 477, 482 (6th Cir. 2006). Yet, we cast aside *Pruitt*'s holding as dicta in *United States v. Hardin*, albeit in dicta itself. 539 F.3d 404, 412–15 (6th Cir. 2008); *but see id.* at 427–40 (Batchelder, J., concurring in part) (concluding that *Pruitt*'s reasonable-belief standard is the law of the circuit). And following *Hardin*, our approach has been to note our "vacillat[ion]" between the two standards, and then resolve the appeal using the higher probable-cause standard. *United States v. Cammon*, 849 F. App'x 541, 544–45 (6th Cir. 2021). We do the same here.

Because Essex does not dispute officers reasonably believed Votaw was in the trailer, our sole focus is whether it was her residence. At the suppression hearing, Deputy Brown testified that he freshly learned from informants whom he had successfully used in the past that Votaw was "dating Mr. Essex, and living in the residence with him." The magistrate judge deemed these informants "credible." This information, combined with the observation of Votaw driving on the property and entering the trailer, demonstrates the requisite "recent and firsthand knowledge" sufficient to give the officers probable cause, let alone "reasonable belief," that Votaw was living in the trailer. *Hardin*, 539 F.3d at 421–22 (collecting cases, commenting that "[a] common feature of [cases finding sufficient reason for belief] is recent, eyewitness evidence connecting the suspect to the residence, and often even conduct by the suspect that demonstrates a tie to the residence"); *see also United States v. Lewis*, 676 F. App'x 440, 445 (6th Cir. 2017); *United States v. Block*, 378 F. App'x 547, 550 (6th Cir. 2010); *United States v. Ellis*, 125 F. App'x 691, 696 (6th Cir. 2005).

Essex resists this conclusion on a few fronts. He contends that the officers should have verified Votaw's warrant status before entering; however, as the district court concluded, they knew she had an active warrant and there was no reason for them to believe otherwise. Essex also suggests Brown should have provided more information about his known informants' identities, but that failure is not fatal to the government's case—whether probable cause exists requires examining the totality of the circumstances and not applying a mechanical checklist. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983); *cf. United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005) ("The statements of an informant[,] . . . whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source."). And finally, he argues on appeal that the officers entered his home not to arrest her, but rather after they detained him (and Derrick Jones), and then conducted a

subsequent "protective sweep" of the trailer during which they discovered Votaw and the contraband. But he made no such argument to the district court, nor did he object to the magistrate judge's conclusion that the officers "went inside to serve her outstanding arrest warrant." He has thus forfeited this issue on appeal. *United States v. Crawford*, 943 F.3d 297, 310–11 (6th Cir. 2019).

Finally, we would be remiss to not point out that the district court considered other evidence concerning Votaw's residence that officers did not learn about until after they entered the trailer, including admissions by her and Essex that she was living at the trailer. It should not have done so. *See Dickerson v. McClellan*, 101 F.3d 1151, 1155 n.3 (6th Cir. 1996) ("[W]e must consider only the facts the officers knew at the time of the alleged Fourth Amendment violation."). This error does not mandate reversal because the district court's judgment "can be justified for any reason." *Hardin*, 539 F.3d at 421 (citation and emphasis omitted).

For these reasons, the district court properly denied defendant's motion to suppress.

II.

Essex next contends the government did not sufficiently establish that he constructively possessed the drugs and gun forming the factual basis of his convictions. A defendant claiming insufficient evidence "faces a high bar" on appeal. *United States v. Persaud*, 866 F.3d 371, 379–80 (6th Cir. 2017). This is because we must uphold a jury's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We can sustain a conviction based on circumstantial evidence alone, and the evidence need not disprove every hypothesis except that of guilt. *United States v. Lindo*, 18 F.3d 353, 357 (6th Cir. 1994). A sufficiency claim does not allow us to "weigh the evidence presented,

consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (citation omitted). Rather, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id.* (citation omitted).

Constructive possession occurs "when the defendant does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Vichitvongsa*, 819 F.3d 260, 275 (6th Cir. 2016) (internal quotation marks omitted). "Proof that the person has dominion over the premises where the [prohibited item] is located is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (internal quotation marks omitted). Put differently, "[a] jury is entitled to infer that a person exercises constructive possession over items found in his home." *United States v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998) (internal quotation marks omitted).

Viewing the evidence in the light most favorable to the government, any rational jury member could conclude defendant constructively possessed the hundreds of grams of methamphetamine and heroin/fentanyl mixture that officers found in a green ammunition storage box by the bed in the trailer's master bedroom. The jury heard from Votaw, who testified that Essex regularly slept in that bed (and indeed was doing so when she entered the trailer after seeing Deputy Brown) and kept personal belongings there. The trailer's owner also testified that he rented the trailer to defendant. And the jury listened to a jailhouse recording of defendant himself talking about living in that trailer. Finally, the government presented significant evidence tying defendant to drug-trafficking activities, thus circumstantially corroborating his control over the distribution-level quantities of drugs officers found in the bedroom, including: Essex's possession of large amounts of cash, digital scales, and a drug testing kit; deleted text messages discussing drug deals;

and numerous individuals visited the trailer "all the time" to "get[] high." None of this is direct evidence of possession—Essex points out, for example, the lack of forensic evidence tying him to the drugs. But circumstantial evidence equally can provide the basis for a conviction "and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022) (internal quotation marks omitted). For these reasons, the evidence presented at trial more than demonstrates constructive possession generally and the "modicum of additional evidence" specifically needed to tie Essex to the drugs given that Votaw (and possibly others) also lived there. *United States v. Latimer*, 16 F.4th 222, 227 (6th Cir. 2021).

Further, any rational juror could similarly find that Essex constructively possessed a rifle officers found in a Nissan sedan parked on the same property as the trailer. One could begin and end with Essex's admission to Deputy Brown that he had purchased the Nissan. But beyond that evidence of ownership, other facts demonstrate Essex controlled the Nissan—it was parked near the trailer Essex rented, and other witnesses saw Essex routinely driving it. Given these facts, that other individuals were also known to drive the Nissan and that the government again relied on circumstantial evidence of his possession does not give us reason to question the jury's more-than-rational conclusion.

## III.

Finally, Essex challenges as erroneous the district court's application of a sentencing enhancement for obstructing justice under U.S.S.G. § 3C1.1. That provision increases a defendant's offense level by two "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely

related offense." U.S.S.G. § 3C1.1. The government must demonstrate that the obstruction-of-justice enhancement applies by a preponderance of the evidence. *United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002). Although we review legal conclusions de novo and factual findings for clear error, we have "sent mixed messages" on how to "review the application of th[is] guideline to the facts"; sometimes we apply a de novo review of the district court's application, for others we turn to the more deferential clear-error standard, and occasionally we pick something in between. *See United States v. Thomas*, 933 F.3d 605, 608 (6th Cir. 2019) (collecting cases). As above, we need not resolve this tension because, even if we used the more demanding de novo standard, the district court properly applied the enhancement.

The facts supporting the enhancement stem from a phone call Essex placed just before the district court's hearing on his suppression motion to a Pete Jones, with whom Votaw was living at the time. In that call, he stressed to Pete Jones that Votaw and Derrick Jones (the brother of the man police were initially looking for on defendant's property) needed to "tell the truth" at the upcoming suppression hearing, and more specifically that "[h]is version of the truth" was that Votaw was inside the trailer and not with Derrick Jones in the Jeep when Deputy Brown came across the property. (Such a fact, of course, would undermine the justification for entering the trailer without a search warrant). He also expressed his frustration with Votaw's refusal to talk to him and apparent unwillingness to testify in that manner in a not so subtle and intimidating way—he angrily told Pete Jones that she needed to be "throw[n . . .] out in the street," "kill[ed], and throw[n . . .] out in a goddamn river" and that he needed to get his "buddy" to "talk to her." At the suppression hearing, both Derrick Jones and Essex testified that Votaw was inside the trailer (and Votaw did not testify). The district court subsequently concluded that the enhancement

applied because defendant suborned Derrick Jones's perjury, committed perjury, and threatened Votaw.

On appeal, Essex takes issue only with the first two factual bases and says nothing with respect to the district court's conclusion that his threats to Votaw obstructed justice. Nor could he. "[A] defendant has obstructed justice when his behavior can be reasonably construed as a threat," *United States v. Robinson*, 813 F.3d 251, 263 (6th Cir. 2016) (internal quotation marks omitted), and his not-so-veiled, indirect threat immediately before his suppression hearing about Votaw more than suffices to support application of the enhancement, *see United States v. French*, 976 F.3d 744, 749 (6th Cir. 2020) ("Section 3C1.1 covers indirect threats delivered through an intermediary . . . regardless of whether an intended recipient learns of the threat or actually feels intimidated by the threat."). Because this basis independently supports application of the enhancement, we see no reason to reverse the district court on this issue. *United States v. Paull*, 551 F.3d 516, 526 n.2 (6th Cir. 2009). (And even if he we were to look past his threat to Votaw to his perjury and suborning perjury, we agree with the district court that a preponderance of the evidence equally and independently demonstrates Essex obstructed justice for purposes of § 3C1.1.).

IV.

For these reasons, we affirm the district court's judgment.