NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0419n.06

No. 23-5983

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Oct 23, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| CEDRIC LAMAR BROWN, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: GRIFFIN, KETHLEDGE, and BUSH, Circuit Judges.

GRIFFIN, Circuit Judge.

During a traffic stop, Tennessee Highway Patrol Trooper Ryan Fletcher smelled the odor of raw marijuana emanating from defendant Cedric Brown's car, and Fletcher used that smell as grounds to search the car. Although the search revealed drugs and guns, the only marijuana discovered was a small amount packed away in the trunk. The district court denied Brown's motion to suppress evidence from the search, finding credible Fletcher's testimony that he smelled marijuana. Brown proceeded to trial on gun and drug charges, and the jury convicted him on all counts. He now challenges the denial of his suppression motion and the sufficiency of the evidence supporting his drug convictions. We affirm.

I.

Trooper Fletcher was monitoring traffic on Interstate 75 in Monroe County, Tennessee, when he pulled over a car, driven by Brown, for speeding and following another vehicle too closely. As Fletcher later testified, when he approached Brown's car and Brown lowered the

window, Fletcher "detected the odor of raw marijuana from the car." But at the scene, Fletcher did not immediately reveal that he smelled marijuana. Instead, he initially told Brown only about his speeding and following too closely. Fletcher next asked Brown to exit the car, frisked Brown for weapons, and "then directed Brown to get in the front passenger side of his patrol car" so that he could ask some questions before issuing a warning citation for the traffic violations.

Inside the patrol car, Fletcher checked Brown's driver's license on his computer and sent a text message to his partner requesting backup. Fletcher asked Brown whether he had ever been arrested, and Brown responded that he served prison time for a gun offense but had been out of prison for more than 10 years. Fletcher then told Brown that his car "reeks of weed" and that Fletcher smelled a "loud" odor of marijuana on Brown's person. Brown denied having any marijuana in his car and denied that he or his car smelled of marijuana.

Trooper Andrew Connors then arrived on scene. The troopers searched Brown and discovered a baggie of pink powder. Brown then made an incriminating statement about the baggie's contents.

The troopers proceeded to search Brown's car. When Connors opened the door to Brown's car, Fletcher asked if he smelled marijuana, and Connors responded that he did. They found two guns with ammunition in the passenger compartment, and several baggies of suspected drugs, including a small plastic bag tied in a knot that contained marijuana, in a backpack in the trunk.

After the search, Connors took two baggies of suspected drugs, put them back in Brown's car, and had his police dog sniff the car as a training exercise. But Connors forgot to retrieve the drugs after he finished the exercise. It turned out that Brown's car was a rental, so a towing company brought the car to an impound lot, where it remained for 10 days, until another towing company brought it to a Hertz rental lot at a nearby airport. Soon after, a security officer was

dispatched to the rental car cleaning area to retrieve a "prohibitive item" from the car, where the officer found "a cellophane-wrapped ball" of suspected drugs. A Tennessee Highway Patrol trooper collected the item, and Trooper Fletcher later identified it as "consistent" with what he found during the traffic stop. Lab analysis identified the drugs found in Brown's rental car, including those recovered at the airport, as heroin and crack cocaine, among others.

A federal grand jury charged Brown with heroin and crack-cocaine offenses, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), as well as gun offenses in violation of 18 U.S.C. §§ 922(g)(1), 924(c). Brown moved to suppress the evidence recovered from the search as well as the incriminating statements he made at the scene. A magistrate judge held an evidentiary hearing, at which Fletcher testified and his dashboard-camera footage was played. The magistrate judge issued a report and recommendation (R&R) that recommended granting the motion to suppress with respect to Brown's incriminating statements but denying it with respect to the physical evidence. Neither party objected to the R&R, so the district court adopted it in full.

Brown proceeded to trial. The jury found him guilty on all counts, and the district court sentenced him to nearly 30 years in prison. This appeal followed.

II.

Brown first challenges the district court's partial denial of his suppression motion on two grounds: as a matter of law, the odor of marijuana cannot provide probable cause to search a car; and as a matter of fact, Fletcher did not smell marijuana.

A.

Both arguments focus on whether the troopers had probable cause to search the car. Under the automobile exception to the Fourth Amendment's warrant requirement, police can search a vehicle (and containers within it) without a warrant if they have probable cause to believe that each

contains evidence of a crime. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Graham*, 275 F.3d 490, 509–10 (6th Cir. 2001). Probable cause means a "fair probability" that, based on the totality of the circumstances, evidence of a crime will be found in the place to be searched. *Florida v. Harris*, 568 U.S. 237, 244 (2013) (citation omitted). It is a "flexible," "practical," and "common-sensical" standard, focused on assessing "probabilities in particular factual contexts," *id.*, based on the "objective facts known to the officers at the time of the search," *United States v. Smith*, 510 F.3d 641, 648 (6th Cir. 2007) (citation omitted).

Ordinarily, when reviewing the denial of a suppression motion, we review the district court's legal conclusions (such as the existence of probable cause) de novo and its factual findings (such as whether an officer smelled marijuana) for clear error. *United States v. Pruitt*, 458 F.3d 477, 480 (6th Cir. 2006); *see also United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994); *United States v. McCallister*, 39 F.4th 368, 372–73 (6th Cir. 2022). But when, as here, a magistrate judge recommends denying the motion, a defendant must file written objections to the R&R to preserve issues for appeal. Fed. R. Crim. P. 59(b)(2). Brown did not do so. As the R&R warned Brown, the failure to timely object "waives the right to review by the District Court" and "waives the right to appeal the District Court's order." Although the R&R and Federal Rule of Criminal Procedure 59 suggest that this failure "waives" appellate review, we treat these issues as forfeited. *See Berkshire v. Dahl*, 928 F.3d 520, 530–31 (6th Cir. 2019).

And we review forfeited issues for plain error. *United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023); *see also* Fed. R. Crim. P. 52(b). Under that standard, Brown must show "(1) error (2) that was obvious or clear, (3) that affected [Brown]'s substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted). We find such error

only in "exceptional circumstances" and only when the error is so plain that the trial judge was "derelict in countenancing it." *Id.* (citation omitted).

B.

Start with Brown's legal argument. Brown contends that, as a matter of law, an officer's "detection of the odor of marijuana" cannot provide probable cause to search a vehicle because of the recent "legalization of hemp under both federal and Tennessee law." That contention rests on two premises. First, Brown points out that, in 2018, Congress removed "hemp" from the federal definition of marijuana. *See* Agriculture Improvement Act, Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018 (2018) (codified at 21 U.S.C. § 802(16)(B)). And the Tennessee legislature followed suit in 2019, establishing that Tennessee law "does not categorize hemp . . . as a controlled substance." 2019 Tenn. Pub. Acts 87, § 3 (codified at Tenn. Code Ann. § 39-17-415(c)). Second, Brown argues that marijuana and hemp smell the same. *See, e.g.*, Cynthia A. Sherwood et al., *Even Dogs Can't Smell the Difference: The Death of 'Plain Smell,' As Hemp Is Legalized*, 55 Tenn. B.J. 14, 15–17 (2019). "[B]ecause the smell of both legal hemp and illegal marijuana are indistinguishable," Brown concludes, "the smell alone is no longer sufficient to establish probable cause."

Even accepting Brown's latter premise as true, his argument fails under plain-error review. Under the first two elements of that demanding standard, we ask whether the error would be clear or obvious as the law stands today. *See Vonner*, 516 F.3d at 386; *United States v. Cavazos*, 950 F.3d 329, 337 (6th Cir. 2020). And Brown points to no case in our court or the Supreme Court that renders the district court's conclusion a clear or obvious error. *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) ("A lack of binding case law that answers the question presented will also preclude our finding of plain error.").

To the contrary, caselaw points in the opposite direction. Begin with the fact that "our court has long held that officers have the required probable cause when they detect the odor of illegal marijuana coming from the vehicle." *United States v. Brooks*, 987 F.3d 593, 599–600 (6th Cir. 2021) (collecting cases). Next, consider that we recently rejected a similar argument about the legality of hemp and the smell of marijuana. In *McCallister*, we held that officers reasonably suspected that the defendant had smoked marijuana, in part because officers smelled marijuana near him. 39 F.4th at 375. It did not matter "that the marijuana odor could have been a legal substance, like hemp, instead of illegal marijuana." *Id.* Because "the odors of hemp (legal) and marijuana (illegal) are indistinguishable, the odor suggested at least a moderate chance that [the defendant] smoked marijuana." *Id.* That *McCallister* focused on whether this odor gave rise to reasonable suspicion, instead of probable cause, is of no moment for purposes of our plain-error review here. Like reasonable suspicion, probable cause "does not require proof that the suspect committed a crime." *Id.* at 375. Indeed, probable cause "is not a high bar"; rather, it requires only a "substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citations omitted).

For these reasons, the district court did not plainly err in its conclusion that the smell of marijuana was sufficient to give rise to probable cause to search Brown's car.

## C.

Next up is Brown's factual argument. He contends that the district court's probable-cause finding lacked factual support "because Trooper Fletcher did not credibly or sufficiently establish that he smelled marijuana." Again, Brown's argument fails under the first two elements of the plain-error standard because he cannot show a clear or obvious error by the district court.

"A district court does not clearly err so long as the finding is plausible in light of the record viewed in its entirety." *McCallister*, 39 F.4th at 372 (internal quotation marks omitted). Indeed, "where there are two permissible views of the evidence," the district court's choice between them "cannot be clearly erroneous." *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (brackets and citations omitted). What is more, when reviewing the denial of a motion to suppress, we must view the evidence "in the light most likely to support the district court's decision." *Pruitt*, 458 F.3d at 480 (citation omitted). And we review "credibility findings" with "particular deference" because the district court, unlike us, had the opportunity to observe the witness's testimony and demeanor firsthand. *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006).

Here, the magistrate judge found "credible" Fletcher's testimony that, when he first spoke with Brown through the open window of Brown's car, Fletcher smelled a "strong odor of marijuana" emanating from Brown's car. Brown argues that circumstantial evidence from the dashboard-camera footage and Fletcher's behavior at the scene contradict Fletcher's testimony. His briefing seems to suggest that what the evidence really shows is that Fletcher did not smell marijuana but rather lied about the smell after learning more about Brown's criminal history as a pretext to search the car. But none of the evidence Brown relies on renders the magistrate judge's credibility determination clearly erroneous.

First, Brown points to Fletcher's delayed reactions as evidence that Fletcher did not smell marijuana when he first encountered Brown. Even though Fletcher testified that he smelled marijuana immediately when he first spoke to Brown through the open car window, he did not mention the smell until after he ran Brown's license and asked about his criminal history. And

Fletcher did not immediately call for backup to help search the car—again, it was not until after the two were seated in the cruiser that Fletcher texted his partner.

But Fletcher explained these delays. He described the area where the traffic stop occurred—with Interstate 75 on one side and a field with woods beyond on the other—and he explained that the Tennessee Highway Patrol has "had some inciden[ts] on 75 in that specific area . . . with people fleeing into the wood line." Fletcher wanted to avoid "any extreme emotional situation" that could lead to a fight-or-flight reaction from Brown, so he "didn't let the defendant know" that he could smell marijuana in his car "until [he] felt . . . that the situation was under control." And he sent a text message while seated in his patrol car, instead of immediately calling for backup over his radio, because, in his experience, audible calls for backup "can heighten the emotions of the situation." It was not clear error for the magistrate judge to credit Fletcher's explanations that he "did not want to escalate the situation, while he was alone on the scene with [Brown]."

Next, Brown argues that Fletcher never "identified the source of the smell." At first blush, Brown has a point. Fletcher was clear that he detected the odor of "raw" marijuana emanating from the car. Yet the only evidence of marijuana found at the scene was a relatively small amount—something between half an ounce to "just over an ounce." That marijuana was wrapped in "a Saran Wrap-type bag and tied in a knot," which was inside a backpack, which was in the trunk of the car. Although the R&R made no explicit findings on whether that marijuana was the source of the smell, the magistrate judge expressed skepticism that such a small amount of marijuana, packed away in the trunk, could emit an odor strong enough to be noticeable from outside the car. The lack of any marijuana at all (or any other drug paraphernalia) in the car's

passenger compartment and the relatively small amount in the trunk weigh against the credibility of the claim that there was a "strong odor of raw marijuana coming out of the vehicle."

But our job is not to reweigh the evidence anew. To the contrary, so long as the evidence, viewed in the light most favorable to the district court's decision, renders the credibility finding plausible, we must defer to that finding. *McCallister*, 39 F.4th at 372; *Pruitt*, 458 F.3d at 480. And the evidence requires such deference here. It is plausible that Fletcher smelled the odor of marijuana emanating from Brown's car because at least two pieces of evidence, independent of Fletcher's statements, corroborate that conclusion.

First, while the exact source of the odor was never identified, the search revealed that the car was transporting drugs, including marijuana. It thus is plausible that Brown had recently handled marijuana or that the drug had recently been in the car's passenger compartment. Second, Fletcher's dashboard-camera video shows that, just before the troopers searched the car, Connors agreed with Fletcher that the car smelled like marijuana. While Brown might like us to think that the troopers conspired to lie about how the car smelled, it is at least plausible that Connors, like Fletcher, smelled the odor of marijuana emanating from the car.

Brown's other arguments on this front simply mischaracterize Fletcher's testimony. For instance, Brown claims that Fletcher's testimony is implausible because he described the smell of smoked marijuana as "the odor of a smoked cigarette." But in context, Fletcher used the smell of a "smoked cigarette" as an analogy to explain "the difference between that smoked smell versus the raw smell" of marijuana. Along similar lines, Brown claims that Fletcher testified "that he did not think Mr. Brown had marijuana on him." But Fletcher actually testified that he thought Brown "didn't have any [marijuana] *on his person*," which is consistent with his testimony about initially smelling an odor coming from the car. (Emphasis Added). And finally, Brown claims that

Fletcher lacked training to identify the odor of marijuana. But Fletcher testified that he is an accredited drug-recognition expert, had made more than 1,000 traffic stops, and encountered the smell of marijuana "quite frequently" as a state trooper—a job he had held for three years at the time of the traffic stop.

In sum, Brown's evidence does not render the district court's credibility finding clearly erroneous, meaning his argument fails under plain-error review.

D.

For these reasons, the district court did not plainly err when it partially denied Brown's suppression motion.

III.

Finally, Brown challenges the sufficiency of the evidence supporting his drug convictions. His argument is narrowly focused: he argues only that "breaks in the chain of custody" of the drug evidence render that evidence "insufficient to sustain the convictions." "Chain of custody issues are jury questions and the possibility of a break in the chain of custody of evidence goes to the weight of the evidence, not its admissibility." *United States v. Allen*, 619 F.3d 518, 525 (6th Cir. 2010).

When reviewing an evidence-sufficiency challenge, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Calvetti*, 836 F.3d 654, 667 (6th Cir. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Brown was charged with possessing with intent to distribute heroin and crack cocaine, so the essential elements the government had to prove were that Brown (1) "knowingly, (2) possessed a controlled

substance, (3) with intent to distribute." *Allen*, 619 F.3d at 522. Brown's chain-of-custody challenge targets the second element—whether Brown possessed these substances.

The jury heard ample evidence to support the conclusion that Brown possessed the drugs left in the car. Evidence showed that the troopers found various suspected drugs in Brown's car; Connors put some of the recovered drugs back into the car for a training exercise and left them there by mistake; the car was towed to an impound lot protected by a fence, barbed wire, and a locked gate; the car remained there for 10 days before it was towed to the airport; and the suspected drugs were then rediscovered and delivered to the Tennessee Highway Patrol. Fletcher testified that the suspected drugs recovered from the car at the airport were consistent with what he found during the traffic stop. And lab analysis identified drugs found in the car, including those recovered at the airport, as heroin and crack cocaine.

With that evidence, a reasonable jury could conclude that the drugs recovered at the airport were the same drugs found at the traffic stop and that Brown thus possessed heroin and crack cocaine.

IV.

For these reasons, we affirm the district court's judgment.